## Commonwealth v. Duvall.

(Decided June 24, 1927.)

### Appeal from Carter Circuit Court.

1. Embezzlement.—Intent of defendant to embezzle money, received for his employer in course of employment, may be inferred from conduct in receiving money and failure to pay it over, without other independent proof of fraudulent intent to convert property to his own use.

2. Embezzlement.—Intention of employee to convert employer's money to his own use and his retention of it for that purpose constitute crime of "embezzlement," which becomes complete on retaining money with felonious intent.

3. Criminal Law.—Felonious intention does not alone constitute crime, but crime is complete when felonious intention is carried into effect.

4. Criminal Law.—Traveling salesman and collector receiving employer's money in another county, if guilty of crime of embezzlement, committed crime in county in which indictment was found, where delivery of report to employer, in which amount collected was allegedly concealed, was made in latter county.

5. Criminal Law.—Only slight evidence is necessary to sustain venue, and slight circumstances, from which jury might infer place where crime was committed, are sufficient, under Ky. Stats., section 1146, providing court of county where indictment is found shall have jurisdiction in case of doubt.

6. Embezzlement.—Where employee has collected employer's money and failed to account therefor in report, crime of embezzlement is complete without necessity of demand on employe to account and showing of his failure to do so.

7. Embezzlement.—Employee, who receives employer's money and subsequently fails to account for it in report to employer, is guilty of embezzlement, even though he intended thereafter to account for it.

8. Embezzlement.—Employee, who in course of employment receives employer's money, is under duty of accounting for it at time of receipt.

9. Embezzlement.—In prosecution of salesman for embezzlement of moneys collected for employer, question whether defendant had lost money for which he failed to account held question for jury.

10. Criminal Law.—Paper entitled, "Transcript of evidence and bill of exceptions," signed by official stenogarpher, containing certificate that it included evidence, objections, rulings, and instructions given at trial, held sufficient bill of exceptions, where orders copied therein showed filing and approval and signature by judge.

11. Criminal Law.—On appeal by commonwealth from judgment of acquittal, under Criminal Code of Practice, section 337, no motion for new trial was required, inasmuch as trial court could not retry defendant and judgment could not be reversed, under section 339.

12. Criminal Law.—After jury's verdict of acquittal, defendant may not be retried for same crime, in view of Criminal Code of Practice, section 339.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellant.

J. M. THEOBALD for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Certifying the law.

Eugene Duvall was charged by indictment with embezzlement. Upon his trial under that indictment, at the conclusion of the evidence for the commonwealth, the trial court sustained Duvall's motion for a peremptory instruction to acquit him. The jury was so instructed and returned a verdict of "Not guilty." From the judgment entered upon that verdict, the commonwealth, proceeding under section 337 of the Criminal Code, has appealed and asked to have the law certified.

Duvall had been employed as a traveling salesman and collector by the McDavid-Prichard Company, a corporation engaged in the wholesale grocery business at Hitchins, in Carter county, Ky. He was furnished with weekly collection and cash booklets, containing these instructions:

> "Fill in all dates correctly. See that discounts allowances, and cash received equal the invoice intended to be paid. Make full explanation of allowances at bottom of page. To avoid discrepancies, have customers to pay by even bills.
>
> "Be sure that your remittances and your expenses equal your collections for the week. Do not use collections on a previous week. Each book must be complete and final settlement independent of any other book."

He was to report and settle his accounts weekly. These weekly report booklets were printed somewhat in the form of a diary. Thus a page was prepared for the use of the salesman on Monday, similar pages for Tuesday and the other days in the week. Other pages were so printed as to enable the salesman conveniently to keep account of his various expenses. Other printed pages were made detachable for use of the salesman in making remittances. On Monday, August 3, 1925, Duvall's booklet containing his account for the week ending August 1 was received by the McDavid-Prichard Company. In it Duvall reported receipt of $113.08, deducting $12.70 for expenses, and accounted for a balance of $100.38. On Tuesday of the week covered by that booklet, he had called on G. W. Adkins, who was engaged in business at Bascom, in Elliott county, Ky. Adkins had recently bought from the McDavid-Prichard Company a bill of goods which amounted to $30.35. From this Duvall deducted a freight allowance of 57 cents, a discount of 6 cents, and Adkins paid the remaining $29.72 to Duvall, and Duvall receipted Adkins' bill. This $29.72 was not included in Duvall's weekly report. The McDavid-Prichard Company afterwards wrote to Adkins and asked for payment of the account. Adkins mailed it the bill with Duvall's receipt upon it. When this receipted bill reached the McDavid-Prichard Company, it began an investigation which finally resulted in this and other indictments being returned against

Duvall for embezzlement. When confronted by the disclosures that resulted from the investigation, Duvall claimed he had lost the money, but said not how, when, where, or in what way he had lost it. The evidence on the trial developed these facts, and as these indictments were returned in Carter county, where the wholesale house was situated, and this $29.72 was collected in Elliott county, the trial court perhaps concluded that there was a failure to show the commission of any crime in Carter county, and it may be that for that reason the jury was directed to acquit Duvall. If the trial court did this for that reason, its action was erroneous, Duvall came into possession of this money lawfully. The collection of it was a part of his duty under his employment.

When Duvall, as the agent of the McDavid-Prichard Company, in the course of his employment received and collected from Adkins money due the McDavid-Prichard Company and feloniously failed to pay it over, the crime was complete. It was not necessary to introduce other evidence to show a fraudulent intent upon his part to convert it to his own use. That he so intended might be reasonably inferred from the other facts proved. See Morse v. Commonwealth, 129 Ky. 294, 111 S. W. 714, 33 Ky. Law Rep. 831, 894; Commonwealth v. Jacobs, 126 Ky. 536, 104 S. W. 345, 31 Ky. Law Rep. 921, 13 L. R. A. (N. S.) 511, 15 Ann. Cs. 1226. When Duvall made his weekly report and failed to include and account therein for this $29.72, which he had collected during the week, covered by that report, and sent or delivered that report to the office of the McDavid-Prichard Company, in Carter county, Ky., the crime was committed in Carter county. The receipt of this money was lawful, the retention of it was unlawful.

It was not necessary for the commonwealth to show that Duvall spent this money in Carter county or to show that he spent it at all. He may now have every cent of it, and yet be guilty.

The intention of Duvall to convert this money to his own use and his retention of it for that purpose constituted the crime of embezzlement, and the crime became complete when he formed the intention to and did so retain and convert it. If the commonwealth could establish the formation and carrying out of the intention of Duvall to retain and convert this money in Elliott county,

he could be convicted in that county; but a man's intention is a difficult matter to prove, and bare intentions do not constitute a crime, but an intention, when felonious and carried into effect, does constitute a crime. Duvall may have had the intention in Elliott county to retain and convert this money. He may have thereafter repented and later reported and accounted in full, but when he persists in his intention, and in Carter county delivers to his employer, and it makes no difference how he delivers it, a report wherein he conceals and withholds this money, the crime then becomes complete in Carter county, and the venue is in Carter county, where Duvall should have accounted for this money and failed to do so.

See Mangham v. State, 11 Ga. App. 427, 75 S. E. 512; State v. Hengen, 106 Iowa 711, 77 N. W. 453; State v. Bailey, 50 Ohio St. 636, 36 N. E. 233; United States v. Reyes, 1 P. I. 249; United States v. Cardell, 23 P. I. 207; State v. Hoshor, 26 Wash. 643, 67 P. 386; Campbell v. State, 35 Ohio St. 70; State v. Small, 26 Kan. 209; Hopkins v. State, 52 Fla. 39, 42 So. 52; People v. Davis, 269 Ill. 256, 110 N. E. 9; Kossakowski v. People, 177 Ill. 563, 53 N. E. 115; State v. Maxwell, 113 Iowa 369, 85 N. W. 613; Dix v. State, 89 Wis. 250, 61 N. W. 760.

In saying what we have said, we are not overlooking the case of Morse v. Commonwealth, supra. In that case, Morse, who was a traveling salesman for the Consumers' Distillery Company, a Kentucky corporation, with its principal place of business at Louisville. Morse, while so employed, in Kenton county sold Henry Staggenburg $59.95 worth of whisky certificates. He represented himself to Staggenburg as being Homer Marion, and gave receipts to Staggenburg, signed "Homer Marion." Staggenburg gave him checks payable to Homer Marion, and he cashed these checks under that name in Kenton county, thus evidencing an intent in Kenton county to convert this money to his own use. Nor have we overlooked the case of Commonwealth v. Jacobs, supra. In that case Jacobs was employed by a life insurance company in Cincinnati to collect life insurance premiums due it from people living in Louisville, and to account for such collection either to the home office in Cincinnati, or the superintendent in Louisville. Jacobs collected money, but failed to account. He

was indicted in Louisville, and on his trial the court instructed the jury to find him "Not guilty." In certifying the law, we held this instruction erroneous. The question of venue was not discussed, but as he was under as much duty to report and account in Louisville as he was in Cincinnati, his failure to account in Louisville was sufficient to constitute an offense there. By section 1146 Ky. Stats., it is provided:

> "When it is a matter of doubt, in the opinion of the court, in which of two or more counties the offense was committed, the court of either in which the indictment is found shall have jurisdiction of the offense."

"Slight evidence will be sufficient to sustain the venue, and slight circumstances, from which the jury might infer the place where the crime was committed, are held to be sufficient." Alder v. Commonwealth, 215 Ky. 613, 286 S. W. 696; Sebree v. Commonwealth, 200 Ky. 534, 255 S. W. 142; Stubblefield v. Commonwealth, 197 Ky. 218, 246 S. W. 444; Keefe v. Commonwealth, 175 Ky. 51, 193 S. W. 645.

There is nothing in the language of our statutes to indicate that it was necessary for demand to be made of Duvall before it became his duty to account. See Commonwealth v. Kelley, 125 Ky. 245, 101 S. W. 315, 30 Ky. Law Rep. 1293.

"The intent to embezzle may be manifested by various acts, such as making false entries, denial of receipts of money, not accounting when it should be done, rendering false accounts, or practicing any form of deceit, or running away with the money, or actually expending the money for defendant's own uses contrary to his directions, or otherwise diverting the course of the money to make it his own. Furthermore, intent may be made to appear from circumstantial as well as from direct evidence." 9 R. C. L., p. 1279.

When the commonwealth proved that Duvall had received this money and had thereafter reported and failed to include and account for it in that report, the proof of the crime was complete, even though he intended thereafter to account for it. See N. L. & A. Ins. Co. v. Gibson, 101 S. W. 895, 31 Ky. Law Rep. 101; 12 L. R. A. (N. S.) 717; Morrow v. Commonwealth, 157 Ky. 486, 163 S. W. 452; Met. Life Ins. Co. v. Miller, 114 Ky. 754, 71

S. W. 921, 24 Ky. Law Rep. 1561. Duvall was entitled to use, out of the money collected, such as was necessary for his expenses, and he did use $12.76 for that purpose, but that being true, his retention and failure to account in full for the remainder constitutes embezzlement. See Commonwealth v. Jacobs, supra.

During the cross-examination of the president and general manager of the McDavid-Prichard Company, that witness said of Duvall:

> "When we checked up on him making shortages in various settlements, and got after him, he confessed up about it and said he lost it."

Duvall in his brief has seized on that and contends the proof shows he did not embezzle, but, on the contrary, lost this money. This is so flimsy, that, but for his vehement insistence thereon, we would utterly ignore it. To constitute the crime charged, Duvall must convert to his own use money of his employer with felonious intent. The commonwealth established his receipt of the money. After he received it, the duty of accounting for it then devolved upon him. This does not mean there are no circumstances under which he will be excused for failing to account. Duvall was entitled to defend himself against this charge in any way he could. His statement that he lost this money, when considered in connection with the report for that week wherein he failed to include and account for this $29.72, appears to be the veriest chaff and utterly preposterous, still he may have been succeeded in making such explanation of that report and producing such evidence that he did lose it as to induce a jury to believe it, but that was a matter of defense for him to introduce and establish. His statement that he lost it, made to the president of McDavid-Prichard Company, fell far short of being sufficient to entitle him to a directed acquittal. That statement admitted still left it a question for the jury to determine from the evidence the truth of it.

Duvall has filed a motion to dismiss this appeal for want of a bill of exceptions. There is before us a paper styled, "Transcript of evidence and bill of exceptions." In that paper is a certificate that it contains the evidence, objections, rulings, instructions, etc., given and heard on the trial. The paper is signed by the official stenographer of the Carter circuit court. The orders copied

show that this trial was had on November 13, 1926, that. this transcript, etc., was filed on November 17, 1926, and it was examined, approved, and signed by the judge on December 4, 1926, These orders appear to be regular and sufficient. Duvall's motion to dismiss this appeal for want of a bill of exceptions is overruled.

We have examined the indictment in this case. It appears to be regular and sufficient, and the demurrer to it was properly overruled. No motion for a new trial was made by the commonwealth, but none was neces- sary. The law does not require the doing of a useless. thing. By section 339, Criminal Code, this court can- not reverse this judgment. The trial court could not. retry the defendant for this crime.

The questions presented by this record and our an- swers to them are as follows:

Was it necessary for the McDavid-Prichard Com- pany to make a demand of Duvall to account, and for him to fail then to do so, in order to make this crime complete? Our answer is "No."

Was this crime committed in Carter county? Our answer is "Yes." Was the indictment sufficient? Our answer is "Yes."

Was the embezzlement of this money disproved by the statement of McDavid in his evidence that Duvall said he had lost it? Our answer is "No."

Was the bill of exceptions sufficient? Our answer is "Yes."

Was a motion for a new trial necessary? Our an- swer is "No."

This is now certified as the law.