## Fortney v. Commonwealth.

May 15, 1942.

J. B. Wall, Hiram M. Brock, F. M. Jones, William Lewis and Cleon K. Calvert for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

The appellant, J. G. Fortney, was convicted of embezzling $669.88 from a corporation, the Southeastern Gas & Oil Company, hereinafter referred to as the Southeastern, while acting as its manager, an offense denounced by Section 1202 Kentucky Statutes. His punishment was fixed at confinement in the penitentiary for one year, and to reverse the judgment he assigns three errors: 1, The court erred in ruling on evidence; 2, the instructions were erroneous; 3, the verdict is flagrantly against the evidence. We have reached the conclusion that the third ground is meritorious, hence it will not be necessary to discuss the other two.

E. V. Albert was president of the Black Motor Company, also, he was engaged in the business of distributing gasoline and oil in Harlan County. On January 20, 1937, acting under the name of the Southeastern, although at that time it had not been incorporated, Albert entered into a written contract with the Indian Refining Company, hereinafter called the Indian, to handle exclusively Texaco oil and gas products. In October, 1937, he employed appellant as manager of the Southeastern at a salary of $200 per month and traveling expenses. The Southeastern was incorporated on November 8, 1938, and Fortney subscribed to 55 shares of its stock.

The coal mines in Harlan and surrounding counties treat certain of their coal by spraying it with oil, and the spray oil which the Southeastern was receiving under its contract with the Indian was not satisfactory to its customers. Therefore, Albert arranged for Fortney to go to Memphis to make a contract to purchase spray oil from the Southern Coal Company, hereinafter referred to as the Southern, and had a check drawn on the Southeastern payable to Fortney for $50 to cover his expenses. The trip was a success and Fortney made an oral contract with the Southern on or about September 12, 1938, for the Southeastern to purchase spray oil from it.

Appellant testified that Albert, in order to circumvent the contract he had made in the name of the Southeastern with the Indian, agreed with Fortney that he could operate the spray oil venture as his individual business, and as appellant had no capital, he could make his purchases from the Southern in the name of the

Southeastern; that Albert was chiefly interested in selling gasoline and oil to the mines and to get that business he had to furnish them a satisfactory grade of spray oil. Albert denied he agreed with appellant that the spray oil business was to belong to the latter, and he is corroborated by Fletcher Holmes, a stockholder in the Southeastern and its auditor. However, the $50 given appellant for expenses on the trip to Memphis was charged back to his account.

On September 17, 1938, Fortney wrote the Southern that to prevent complaint by the Indian, this spray oil would be handled by the J. G. Fortney Brokerage Company, and on September 24th, he had the attorney who represented the Southeastern to prepare a certificate for him to do business under that name which was recorded in the county court clerk's office. He had letterheads and invoices printed in the. name of the brokerage company and sold this oil as his property and retained the profits.

On November 23, 1938, he requested Holmes, auditor of the Southeastern, to countersign that company's check payable to the Southern for $788.55. Holmes refused, thereupon appellant signed Holmes' name thereto "by J. G. Fortney," had the check certified by the bank and mailed it to the payee. Holmes reported this to Albert, who discharged appellant and immediately demanded an accounting. It appears that in August, 1938, Fortney had raised his salary $25 per month as manager of the Southeastern without mentioning that fact to Albert. Holmes and Albert testified Fortney admitted that he was short in his accounts, but Fortney explains this admission by saying that the Southeastern was overdrawn in the bank but this had happened on previous occasions.

After Fortney was discharged, a warrant was issued against him for embezzling $1,573.88 from the Southeastern, followed by an indictment charging embezzlement of $669.88. The bill of particulars filed by the Commonwealth on motion of appellant shows that the $669.88 he is charged with embezzling represents profits from the sale of spray oil, freight on shipments thereof and a balance of $421.12 owing on the purchase of 10 cars of oil shipped to the Southeastern by the Southern from September 12 to October 15, 1938. No other items are included in the amount alleged to have been embezzled.

Embezzlement did not exist at common law and is

purely a statutory offense, therefore Section 1202, Kentucky Statutes, and our opinions construing it, must be examined to determine the constituent elements of the crime. 29 C. J. S., Embezzlement, Section 2, p. 671; Smedley v. Com., 138 Ky. 1, 127 S. W. 485, 129 S. W. 547. It was incumbent upon the Commonwealth to prove that the money in question belonged to the corporation; that it was lawfully in the possession of the accused by virtue of his office or employment; that he converted it to his own use with the fraudulent intent to deprive the owner of his property. 29 C. J. S., Embezzlement, Section 5, p. 674; Smedley v. Com., 138 Ky. 1, 127 S. W. 485, 129 S. W. 547; Westerfield v. Prudential Ins. Co. of America, 264 Ky. 448, 94 S. W. (2d) 986. The gravamen of the offense is the fraudulent intent to deprive the corporation of its property. In Com. v. Duvall, 220 Ky. 771, 295 S. W. 1047, 1049, this excerpt was quoted from Com. v. Kelley, 125 Ky. 245, 101 S. W. 315, 30 Ky. Law Rep. 1293, 15 Ann. Cas. 573:

> " 'The intent to embezzle may be manifested by various acts, such as making false entries, denial of receipts of money, not accounting when it should be done, rendering false accounts, or practicing any form of deceit, or running away with the money, or actually expending the money for defendant's own uses contrary to his directions, or otherwise diverting the course of the money to make it his own. Furthermore, intent may be made to appear from circumstantial as well as from direct evidence.' 9 R. C. L. p. 1279.''

When the law is applied to the facts in this record, it is manifest that the verdict is flagrantly against the evidence. Fortney handled the spray oil in this manner. He would take an order from a mine on a printed invoice of the brokerage company for a car and then order the oil, usually by wire, from the Southern, who would consign it freight prepaid to the Southeastern at the point where the mine was located. The mine paid for the oil by check in favor of the brokerage company and Fortney would then pay the Southeastern or the Southern for the oil and freight, retaining the profits. Fortney claimed to be the owner of the oil sold, although admitting he owed the Southeastern for it. The checks he received in payment were deposited to the credit of the brokerage company in the bank where the Southeastern carried its

account, and of which Albert was a director. Fortney transacted the business of the brokerage company in the office he occupied as manager of the Southeastern and used some of the latter's employees in attending to the brokerage company's affairs. Holmes, the auditor of the Southeastern and one of the stockholders, testified he knew approximately the time that Fortney started the brokerage company and that it was handling this spray oil. He told Fortney he must account to the Southeastern for the profits made on the oil.

In the middle of January, 1939, when James Sampson, an attorney representing the Southern, demanded payment from the Southeastern of the balance of $421.12 due on the oil the brokerage company had sold, it informed him this was not its debt, but that of Fortney. Thereupon, Sampson asked Fortney for payment and he acknowledged that it was his indebtedness and promised to pay as soon as he could obtain the money. The account was finally paid by the Southeastern in March, 1940.

The evidence conclusively shows Fortney practiced no fraud or deceit upon the Southeastern, but rather that all his dealings in selling this oil followed the regular course of business. Nothing was done secretively and no effort was made to cover up or conceal anything. This is not an action to determine whether or not Fortney is indebted to the Southeastern, but to determine whether or not he feloniously and fraudulently converted its money to his own use. A verdict in a criminal case should be set aside when it is so flagrantly against the evidence as to indicate it was reached as a result of passion or prejudice on the part of the jury. Here the Commonwealth produced no evidence that appellant acted fraudulently in selling this oil and retaining the proceeds. All the proof points to the fact that Fortney sold this oil as his own property, acted openly in so doing and that the Southeastern knew his method of procedure and it even denied that the balance due the Southern was its debt.

Where there is only a scintilla of evidence against the accused and this court sets aside the verdict as being flagrantly against the evidence and on another trial the evidence is substantially the same, the trial court will follow the rule enunciated in Nugent v. Nugent's Ex'r,

281 Ky. 263, 135 S. W. (2d) 877, and direct a verdict in behalf of accused. Carpenter v. Com., 287 Ky. 819, 155 S. W. (2d) 240; Shepherd v. Com., 289 Ky. 353, 158 S. W. (2d) 643.

The judgment is reversed with directions to grant appellant a new trial and for proceedings consistent with this opinion.

The whole Court sitting.