### Collier et al. v. Commonwealth.

Oct. 19, 1943.

French Hawk and D. I. Day for appellants.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellants, with Clyde Scott, were jointly indicted on a charge of embezzlement, KRS 434.020, it being alleged that while Scott was serving as magistrate, and appellants respectively constable and deputy, the three collected a fine of $14.50 from C. L. Smith for a violation of a motor vehicle law, which they failed to report to the circuit clerk, and converted to their own use.

The joint trial of appellants resulted in a verdict of guilty, the jury fixing the punishment of each at two years confinement. Their motion for new trial was overruled and they appeal. Supporting that motion appellants advanced five or more grounds, but counsel here only suggests reversal on the following grounds: (1) Because the trial court overruled motion for a favorable directed verdict at the close of Commonwealth's and all the evidence; (2) Because the verdict is not supported by sufficient competent evidence, it being urged that the evidence upon which the jury obviously relied in determining guilt was that of Scott, an accomplice, without other evidence tending to show guilt. Criminal Code of Practice, Section 241; (3) The court failed to instruct correctly, and did not give the whole law of the case.

The Commonwealth introduced C. L. Smith, who lived in West Virginia, and was engaged in hauling by motor truck. In April 1942, and prior to that time he had been operating in Letcher County where he had a saw mill. He said that his driver had lost a Kentucky license tag, and one of the appellants charged the driver with operating without a displayed tag. He did not take the driver in charge, but the driver informed Smith of the notice. Smith went to Scott's office the following day and without trial paid him $14.50 in cash, taking a

receipt. He stated that at the time of payment neither of the appellants were present, though they had seen him and told him to "go ahead and buy his tags." They did not mention the amount of the fine, or the fact that he would be fined. He says he was never arrested, and that they did not arrest the driver, but "noticed him for driving without license." Kirby Ison, circuit court clerk, said that his records did not show report or return of the fine collected from Smith.

Scott had previously plead guilty and was given a two year sentence. He was brought to court from the Reformatory and told an amazing story. He said he was present when Fields arrested or "noticed" the driver of the Smith truck. Scott told Fields that he knew Smith and he would "just let him come into court" and pay the fine. He gave Smith a receipt for the $14.50. He stated that he split the money three ways. He admitted that he never reported or intended to report the collection of the fine; "the fact was I couldn't make no money at that kind of a job and I wouldn't work, and the defendants wouldn't work and we had to live some way." He said that following his election he made an arrangement with appellants whereby the three were to divide collected fines. Scott admitted that he was an habitual drinker, and had collected other moneys in the way of fines without reporting or paying to the proper officer. He denied that he had told other persons he only paid the two constables their costs, and kept the remainder of the fine. This was the substance of his testimony.

Fields denied that he arrested the truck driver or told him to report to Scott. He had advised Smith to get tags for his truck. He denied emphatically that Scott gave him any portion of the Smith fine, and that there was any arrangement for a division of this or other collected fines or fees. He stated that Scott, in the presence of two other persons, had stated that the only portion of the collection given Fields was a part of the costs, which they say they did not receive. Other witnesses testified that Scott had told them that neither Fields nor Collier "had a thing to do with this $14.50." Collier testified about the same as Fields; that the first he had heard of the incident was when the clerk read the indictment. He had told Smith that he should procure license tags for his truck, and he had agreed to do so, and Scott knew this fact. Three or more witnesses testified that Scott's reputation for veracity was bad.

The charge in the indictment was that appellants and Scott, while acting in their respective official capacities, had collected a fine of Smith, and feloniously converted same to their benefit, with the fraudulent and felonious intent of depriving the rightful owners of the funds or any interest therein. Embezzlement is a statutory offense. If the indictment was drawn under the section supra, particularly Subsection 1, and it seems to have been, charging that the fine or a portion thereof belonged to the Commonwealth; that it was lawfully in the possession of the accused by virtue of office or employment; that they converted it to their own use with the fraudulent intent to deprive the owner of the property. The gravamen of the offense is the conversion with the ''fraudulent intent to deprive'' the owner of his property. Fortney v. Com., 290 Ky. 659, 162 S. W. (2d) 193; Westerfield v. Prudential Ins. of America, 264 Ky. 448, 94 S. W. (2d) 986.

The Attorney General in brief treats as ''serious'' the argument of appellant that there was no corroborative evidence tending to fasten guilt upon appellants, but contends that the fact that Fields was present when the driver of the Smith truck was apprehended and ''noticed'' him to appear in court, and that Smith discussed the matter with the peace officer, and that during their service in office had received very little compensation for their services, which were, as far as the record shows, nil, were circumstances which had some weight with the jury, and as showing guilt. We are of the opinion that while they were circumstances to be considered by the jury, they were not of such character as to tend toward the establishment of the charge that they received a part of the Smith fine.

We are aware that in the case of Williams v. Com., 257 Ky. 175, 178, 77 S. W. (2d) 609, we held in giving construction to the section of the Criminal Code of Practice supra, that any evidence tending to corroborate the testimony of an accomplice is sufficient to support conviction, the rule supra, not necessitating that corroborating evidence be of itself sufficient to establish guilt. In applying the test in determining whether or not the testimony of an accomplice is sufficient to support a conviction, the evidence of the accomplice should be eliminated, and if there be sufficient evidence direct or circumstantial which tends to connect the accused with the crime, then

there is sufficient corroboration. Miller v. Com., 285 Ky. 251, 147 S. W. (2d) 394.

Applying that test, we must confess that we fail to find any testimony save that of Scott which would tend toward manifesting that either appellant was paid or received any portion of the Smith fine. In this particular the Commonwealth failed to make its case, and a peremptory should have been given. See Fortney v. Com., supra.

Counsel for appellant, in his motion for new trial, suggested that the court did not correctly instruct the jury, and did not give the whole law of the case. In his brief he does not elaborate on this point. The indictment here was purported to have been drawn under Sections KS 1205 or 1206, one or the other, or under KRS 434.020 (1) or (3). As we read these sections the penalty fixed is confinement for not less than one nor more than ten years. The court in his instructions fixed the minimum at not less than two years; the jury fixed the two year minimum. This error alone would justify a reversal. In case of a retrial the court should follow the statutes.

Any question raised and not discussed or determined by us is specifically reserved. The judgment is reversed with directions to grant appellants a new trial, and if thereupon the evidence be substantially the same, the court will direct a verdict in favor of the accused following the rule laid down in the Fortney case, supra.

Judgment reversed.