Nefchevious MATHEWS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 97–SC–000053–MR.

Supreme Court of Kentucky.

March 25, 1999.

As Modified on Denial of Rehearing
Aug. 26, 1999.

David T. Eucker, Department of Public Advocacy, Frankfort, for Appellant.

A.B. Chandler III, Attorney General, Perry T. Ryan, Assistant Attorney General, Criminal Appellate Division, Frankfort, Christopher Hancock, Asst. Commonwealth's Atty., Bowling Green, for Appellee.

GRAVES, Justice.

Appellant, Nefchevious Mathews, was convicted in the Warren Circuit Court of intentional murder and sentenced to life imprisonment. He appeals to this Court as a matter of right. After hearing oral arguments and reviewing the record, we affirm.

On October 25, 1995, Appellant and Dalton Morrow engaged in an argument which escalated to the point that there was an exchange of gunfire. Appellant's gunfire missed Morrow, but fatally struck an innocent bystander who was standing some distance away. A Warren County jury found that Appellant fired first with the intent to kill Morrow, and convicted him of intentional murder.

█ Appellant's first claim of error is the trial court's refusal to suppress his statement to the arresting officer. He argues that the prosecution withheld this statement in violation of a discovery order. Appellant claims that the court's refusal to suppress this statement precluded his testifying and thereby denied him due process and a fair trial.

At the close of its case-in-chief, the Commonwealth called Darlene Lackey, a detective with the homicide unit of the Cincinnati Police Department. Defense counsel objected and claimed surprise because there was no motion to secure the attendance of Detective Lackey and there was not a returned subpoena in the file. At sidebar, defense counsel was informed that Detective Lackey was prepared to testify not only as to the date and location of Appellant's arrest, but also to Appellant's oral statement given after signing a waiver of his constitutional rights. Appellant told Detective Lackey that he did not shoot the victim, but that a third party fired the fatal shot. Prior to Detective Lackey being called, Appellant apparently planned to claim self-defense.

The trial court ruled Detective Lackey could testify during the Commonwealth's case-in-chief only as to when and where she arrested Appellant, because the testimony was relevant to show flight; however the trial court further ruled that if Appellant chose to testify, and claimed self-defense, the Commonwealth could introduce the statement during rebuttal to show a prior inconsistent statement. Appellant argues this ruling prevented him from testifying, thereby "gutting" his self-protection defense.

Appellant contends he was entitled under RCr 7.24(1) to have the Commonwealth provide in pretrial discovery the substance of his own alleged statement. Appellant also cites the Commonwealth's constitutional duty to provide an accused with any exculpatory evidence. *Eldred v. Commonwealth,* Ky., 906 S.W.2d 694, 701 (1995). Citing *McGinnis v. Commonwealth,* Ky., 875 S.W.2d 518, 521 (1994), *overruled on other grounds, Elliott v. Commonwealth,* 976 S.W.2d 416 (1998), Appellant argues a defendant's own testimony is essential to the presentation of a self-protection defense. Additionally, Appellant points to RCr 7.24(9), which allows a trial court to direct a party to permit

discovery, grant a continuance, prohibit the introduction of undisclosed evidence, or "enter such other order as may be just under the circumstances."

The Commonwealth responds that Appellant, on the advice of counsel, made a strategic decision, based upon the facts and circumstances as they existed at the time, not to testify and risk impeachment. The Commonwealth further contends that Appellant could have chosen to testify by avowal under RCr 9.52 and, since no record was made of what Appellant actually would have testified to, this Court has no way to determine whether Appellant's testimony would have been inconsistent with his prior oral statement. We agree.

RCr 7.24(1) states in relevant part:

Upon written request by the defense, the attorney for the Commonwealth shall disclose the substance of *any oral incriminating statement* known by the attorney for the Commonwealth to have been made by a defendant to any witness, and to permit the defendant to inspect and copy or photograph any relevant ... written or recorded statements or confessions made by the defendant, or copies thereof, that are known by the attorney for the Commonwealth to be in the possession, custody, or control of the Commonwealth....

(Emphasis added).

In *Anderson v. Commonwealth,* Ky., 864 S.W.2d 909, 914 (1993), we held the oral statement of one defendant which was recorded in a social worker's notes was clearly discoverable under RCr 7.24. However, this Court stated in *Berry v. Commonwealth,* Ky., 782 S.W.2d 625, 627 (1990), "RCr 7.24 applies only to written or recorded statements." This portion of *Berry* dealt with the defendant's claim of a discovery violation where the prosecution had not provided prior to trial a witness's statement identifying the defendant. At best, this would have been a claim of violation of RCr 7.24(2), which deals with statements made by witnesses, not 7.24(1), which deals with statements made by the defendant. However, in *Partin v. Commonwealth,* Ky., 918 S.W.2d 219, 224 (1996), we upheld *Berry* in a RCr 7.24(1) context. In *Partin,* a police detective revealed for the first time at trial that the defendant had said, "Oh, well," when he was informed of the state in which his estranged paramour's corpse was found. *Id.* This Court found no harm in the admission of this statement and, despite paraphrasing the relevant portions of RCr 7.24(1), found the above quoted sentence from *Berry* applicable so that no error occurred. *Id.*

Concerning the nature of Appellant's statement, there is a distinction between the cited case law and the facts at hand. Clearly, claiming that another was responsible for the shooting does not constitute an incriminating statement so as to fall under the guise of RCr 7.24(1). Further, although Appellant's statement could be considered exculpatory, he was aware that he, in fact, made such an assertion to Detective Lackey. Appellant's failing to reveal the statement to his counsel can only be viewed as a strategic decision.

An additional consideration is the fact that defense counsel chose to reserve opening statement and Appellant ultimately did not testify. As such, although Appellant had alluded to a self-protection defense, we have no way of knowing what Appellant's testimony would have actually been. In *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), defendant Luce moved the trial court to preclude the prosecution from using a prior conviction to impeach him if he testified. The trial court denied the motion and Luce did not testify. On appeal, he argued that the trial court's ruling effectively precluded him from testifying. Disagreeing with Luce's position, the United States Supreme Court ruled that (1) in order for an appellate court to review the error, Luce had to testify so the court could determine whether there was any prejudicial effect; (2) any possible harm from the trial court's

decision was wholly speculative since Luce did not testify; (3) because Luce's decision whether to testify did not likely turn on one single factor, the appellate court could not assume the adverse ruling motivated his decision not to testify; and (4) to raise and preserve for review a claim of improper impeachment of the defendant, the defendant must testify. *Id.* at 39–43, 105 S.Ct. at 461–464.

Kentucky has a procedure enabling a criminal defendant to testify by avowal in the event he believes it necessary to place his testimony into the record out of the presence of the jury. RCr 9.52. Appellant did not avail himself of this remedy. In the absence of anything in the record to indicate the substance of Appellant's testimony, had he chosen to testify, this Court is unable to review such testimony to determine whether it would have been consistent or inconsistent with the prior statement. Appellant simply has failed to demonstrate that the trial court's ruling precluded his testifying. A defendant does not have the right to present testimony free from the legitimate demands of the adversarial system.

■ Appellant next claims that the trial court committed palpable error in the sentencing phase when the trial court erroneously instructed the jury to consider imposing a penalty of life without probation or parole for twenty-five years when such a penalty was not authorized due to the lack of any aggravating circumstances. KRS 532.025(3). However, after deliberating an hour and a half, the jury recommended a sentence of life imprisonment. Appellant claims the error in the sentencing phase instruction "skewed what was clearly a compromise sentencing verdict." Appellant argues the jury sought to impose the penultimate penalty which, under the correct instructions, would have been imprisonment for a term of years, not life. Therefore, the sentence would not have been the same had the error not been committed. Appellant cites RCr 9.54(1) for the proposition that the court must

instruct the jury only on the law of the case. This claim of error is unpreserved. Appellant, therefore, seeks review under RCr 10.26.

The Commonwealth responds that RCr 9.54(2) precludes this Court from reviewing this error on appeal because the error in the instruction was not properly presented to the trial judge, thus affording him the opportunity to remedy the situation. The Commonwealth further asserts the error here does not reach the level of palpable error under RCr 10.26 and argues any error was harmless in light of the fact that the jury sentenced Appellant to a permissible term of years for a capital offense committed without an aggravating circumstance. The Commonwealth urges that the error was not so obvious that it was easily recognized or that it undermined Appellant's constitutional right to a fair trial to a degree which would call into serious question the reliability of the judgment. Finally, the Commonwealth contends there was no manifest injustice because there is not a substantial possibility the sentence would have differed if not for the error where the jury did not clearly rely upon the erroneous instruction.

■ Case law does set forth a procedure for dealing with errors in penalty instructions. If the trial judge instructs the jury as to an improperly high maximum penalty, but the jury sentences the defendant to the minimum penalty, "no error prejudicial to the accused is committed for irrespective of what, under the law or the instructions, he might have received, he got only the least punishment prescribed by the statute." *Durham v. Commonwealth,* Ky., 241 Ky. 612, 615, 44 S.W.2d 557, 558 (1931); *see also Runyon v. Commonwealth,* Ky., 215 Ky. 689, 694–95, 286 S.W. 1076 (1926); *Dunn v. Commonwealth,* Ky., 193 Ky. 842, 845–46, 237 S.W. 1072 (1922). When the trial judge instructs the jury as to an improperly low minimum penalty and the jury sentences the defendant to the improper minimum penalty, "the accused is not prejudiced."

*Durham, supra,* 241 Ky. at 615, 44 S.W.2d 557 (citing *Mobley v. Commonwealth,* Ky., 190 Ky. 424, 426, 227 S.W. 584, 585 (1921)). Where the trial judge instructs the jury as to an improperly high minimum penalty, but the jury sentences the defendant to a penalty greater than the improper minimum penalty, no prejudicial error has been committed. *Middleton v. Commonwealth,* Ky., 197 Ky. 422, 425, 247 S.W. 40, 42 (1923); *Sebree v. Commonwealth,* Ky., 200 Ky. 534, 540–41, 255 S.W. 142, 144–45 (1923). However, when the trial judge instructs the jury as to an improperly high minimum penalty, and the jury sentences the defendant to the minimum penalty as instructed, "[t]his error alone would justify a reversal." *Collier v. Commonwealth,* Ky., 295 Ky. 486, 490, 174 S.W.2d 773, 775 (1943). Finally, where the trial judge instructs the jury as to an improperly high minimum and maximum penalty, and the jury sentences the defendant to a penalty which would have been the maximum under proper instruction, "the court committed a fatal error in so instructing the jury." *Short v. Commonwealth,* Ky., 291 Ky. 604, 609, 165 S.W.2d 177, 179 (1942); *see also, Durham, supra.*

In this case, the judge instructed the jury as to an improperly high maximum penalty; however, the jury returned a sentence within the statutory range of sentences for intentional murder committed without an aggravating circumstance. In *Russell v. Commonwealth,* Ky.App., 720 S.W.2d 347 (1986), the Court of Appeals refused to consider an argument that the trial court over-instructed a jury when the defendant was ultimately convicted of a lesser-included offense. "[C]onviction of a lesser-included offense renders the instruction on the greater offense harmless error." *Id.* at 347. (Citations omitted).

Appellant has failed to demonstrate how he was prejudiced by an instruction upon which the jury did not rely. Nor has he substantiated his claim of a "compromised verdict." Since Appellant received a statutorily valid sentence, no palpable error occurred. RCr 10.26

■ Finally, Appellant argues that the trial court erroneously permitted the Commonwealth to "glorify" the victim by reiterating that the victim was an innocent bystander and Appellant had no reason to defend himself. Appellant further takes issue with the prosecutor's reference to the victim's "mama and baby boy." Appellant claims that these statements were irrelevant and highly prejudicial because the decedent's conduct and state of mind were not at issue.

■ Again, we note that this error is unpreserved in that any objections Appellant did raise at trial differ from those presented on appeal. Nonetheless, the law has always permitted the prosecutor to present the human side of a victim. *Bowling v. Commonwealth,* Ky., 942 S.W.2d 293 (1997). We do not believe the Commonwealth's statements constituted "glorification" of the victim. No error occurred.

The judgment and sentence of the Warren Circuit Court is affirmed.

COOPER, GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur.

STEPHENS, J., dissents by separate opinion in which LAMBERT, C.J., and STUMBO, J., join.

STEPHENS, Justice, dissenting.

Respectfully, I dissent.

Appellant, Nefchevious Mathews, was sentenced to life imprisonment as a result of his conviction for intentional murder. As a result of a gross violation of the rules of criminal procedure at his trial, I cannot agree with the majority's conclusion that no reversible error occurred.

During the Commonwealth's case-in-chief the Commonwealth called Detective Darlene Lackey to testify, based on eight to ten pages of notes, as to statements made by Mathews when she arrested him. This was the first time that appellant was

made aware of the existence of these notes or the intent to call Lackey to the stand. Appellant made a timely objection. Appellant claims that this is an impermissible violation of his rights. I agree.

The statement in question dealt with the issue of who fired the shot which lead to the death of the victim. Detective Lackey was ready to testify that appellant told her that someone else had fired the fatal shot when she arrested him. Appellant's position at trial was that he had fired the shot, but it had been in self-defense.

Appellant forwards three arguments as to why Lackey's testimony should have been disclosed to the defense prior to trial. First, RCR 7.24(1)(a) mandates that the Commonwealth disclose the substance of any oral incriminating statement made by a defendant to any witness. Second, RCr 7.24(1)(a) mandates that the defendant be permitted access to any relevant written or recorded statements, whether incriminating or not. Third, *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694 (1995), requires that all exculpatory evidence be provided to a defendant. Depending on the perspective taken, it can certainly be argued that appellant's statement falls into all three categories.

RCr 7.24(1)(a) requires that:

> [T]he attorney for the Commonwealth shall disclose the substance of any oral incriminating statement known by the attorney for the Commonwealth to have been made by a defendant to any witness, *and* to permit the defendant to inspect and copy or photograph any relevant written or recorded statements.

(emphasis added). There are two clear parts to RCr 7.24(1)(a). The first requires that the Commonwealth "disclose the substance of any oral incriminating statement . . . made by a defendant to any witness." The second mandates that the Commonwealth give the defendant access to "any relevant written or recorded statements." The reason that it is clear there are two separate parts to RCr 7.24(1)(a) is that the conjunction "and" is employed in the middle of the rule. Accordingly, there are two separate burdens imposed by RCr 7.24(1)(a).

RCr 7.24(1)(a) demands disclosure of "any incriminating statement." This is not a vague or complex concept. Basically anything that the defendant has said to a witness which in any way incriminates himself or herself must be disclosed to the defense. This part of the rule does not require that the statement even be recorded, simply that the Commonwealth know of the statement. In this case, there can be no real question that the Commonwealth knew of the statement, thus the only unresolved issue is whether such a statement was in any way incriminating.

Appellant admitted to Lackey that he was present in the vehicle from which one person fired a weapon at another person. Obviously he did not incriminate himself as to being the shooter, but certainly he incriminates himself by admitting to being present in the vehicle from which the shots were fired. There are other types of criminal liability such as facilitation, conspiracy or complicity in which it is not necessary to perform the actual crime, but merely assist in some fashion. So for the majority to assert that appellant did not incriminate himself in the shooting does not deal with the issue of the other crimes for which he might have incriminated himself.

The second part of RCr 7.24(1)(a) requires that the defense be given access to any relevant written or recorded statement. This is a much broader requirement than the first portion of the rule in that the standard is not incrimination, but rather relevance. In this case I cannot believe that a serious argument against relevance can even be entertained since it was the Commonwealth who wanted this evidence admitted. Accordingly, the statement is relevant.

The majority asserts that since appellant did not write the statement in question out in longhand, it cannot be considered "written" within the meaning of RCr

7.24(1). Written is defined as "to draw or form by or as if by scoring or incising a surface." Webster's Third New Int'l Dictionary 2640 (3rd ed. unabridged 1993). Even accepting arguendo, how can the majority conclude that Detective Lackey's reduction of the statement to writing is not "recorded" within the meaning of RCr 7.24(1)? Recorded is defined as "to make an objective lasting indication of in some mechanical or automatic way." *Id.* at 1898. Either this statement ·was written or recorded within the meaning of RCr 7.24(1). Accordingly, it should have been admitted as being a relevant written or recorded statement.

In this case the Commonwealth made a deliberate choice to not follow RCr 7.24(1). This misconduct must not be permitted. We no longer permit "trial by surprise" in the Commonwealth of Kentucky. When a party enters the courthouse, he or she has a right to expect that all members of the bar shall follow the rules. If the majority wishes to rewrite RCr 7.24(1)(a), then it certainly has the legal authority to do so; however, this revision should take place in the normal process of rule changes.

It is beyond question that the Commonwealth possesses a duty to provide an accused with any exculpatory evidence. *Eldred v. Commonwealth*, Ky., 906 S.W.2d 694 (1995) (*citing Pennsylvania v. Ritchie*, 480 U.S. 39, 55–56, 107 S.Ct. 989, 1000, 94 L.Ed.2d 40, 57 (1987). Since the majority has incorrectly taken the view that RCr 7.24(1) does not apply because the statement in question was that someone other than appellant fired the fatal shot, logically this statement must be viewed as exculpatory. However, the majority simply states that if the statement was exculpatory then no violation of *Eldred* occurred because the appellant "was aware that he, in fact, made such an assertion to Detective Lackey." Slip Op. at 451. I do not agree with this conclusion. I am unaware of any exception which, permits the prosecution to fail to produce any information that it thinks the defense possesses. I have re-searched the applicable state and federal cases and I am unable to find any such "defendant is aware of the statement" exception.

*Eldred* requires that all exculpatory information be turned over to the defense. The reason for this is fundamental fairness. *Brady v. Maryland*, 373 U.S. 83, 86, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) (due process requires that a trial be fundamentally fair). The driving force behind any prosecution is the state. To be able to defend against the charges against him, a defendant must know what evidence the state possesses. Otherwise the result is trial by ambush. Accordingly, whether appellant knew the Commonwealth possessed this statement is of no legal significance. The Commonwealth still had a duty to produce it.

However, since the majority has taken the stance that knowledge by a defendant vitiates the need for compliance with *Eldred*, I will proceed along those lines. First, In this case there is no evidence that the prosecution made any effort to discern whether appellant was aware that the statement was possessed by prosecution. Appellant was arrested by Lackey in December of 1995. Appellant was tried in December of 1996. To suggest that appellant should be assumed to remember what happened one year earlier is ridiculous. The prosecution had no idea whether appellant knew it possessed the statement.

Second, Detective Lackey was a member of the Cincinnati, Ohio Police department. Perhaps appellant believed that since Lackey worked for the law enforcement agency of another state that the statement he gave to Lackey would not be passed on to the Commonwealth. This would be a foolish assumption, but then again the entire issue of appellant's state of mind as to whether the prosecution possessed his statement or even if the statement existed is far beyond foolish.

It is a fundamental precept that a prosecutor must conduct himself with "due regard to the proprieties of his office

and to see that the legal rights of the accused, as well as those of the Commonwealth, are protected." (citations omitted).

*Moore v. Commonwealth,* Ky., 634 S.W.2d 426, 437–38 (1982). Unfortunately, in the instant case the Commonwealth has come up far short of this standard of conduct.

I do not suggest that the Commonwealth engaged in this nefarious activity for some mischievous purpose. But rather I suggest that the failure of the Commonwealth to comply with the dictates of RCr 7.24(1) and *Eldred* prejudiced the rights of Nefchevious Mathews. For the reasons I have stated above, I dissent and would reverse and remand for a new trial.

LAMBERT, C.J., and STUMBO, J., join in this dissenting opinion.