Danny Guy HAYES, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2000–SC–1099–MR.

Supreme Court of Kentucky.

Oct. 25, 2001.

■■■■■■■■■■■■■■■■

Emil Samson, Law Offices of Null, Thomas & Samson, Mayfield, Counsel for Appellant.

A.B. Chandler III, Attorney General of Kentucky, George G. Seelig, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

JOHNSTONE, Justice.

Appellant, Danny Guy Hayes, was convicted in McCracken Circuit Court of first-degree sodomy and second-degree persistent felony offender, was sentenced to twenty years in prison, and appeals as a matter of right. On appeal, Hayes argues: (1) that the trial court erred in ruling that the Commonwealth could enter proof of a prior conviction for sexual assault in the third degree; (2) that prejudicial error occurred when the potential jurors were told by the Commonwealth that Hayes admitted that sexual contact occurred only after the laboratory results came back positive; and (3) that the trial court erred in not directing a verdict of acquittal. We disagree and affirm the trial court.

## FACTS

On the evening of December 22, 1999, Gayle Williams traveled from her home in Hickman, Kentucky, to the Hilltop Bar in Paducah, Kentucky, to sing karaoke. Williams saw Hayes, whom she knew casually, at the Hilltop Bar. Hayes invited Williams to the parking lot to share some methamphetamine. Williams accepted the offer. The two smoked the drug and then returned to the bar. After a few more songs, Williams left, alone, and went to another bar called Ginger & Pickles where she hoped to enter a karaoke contest. Williams arrived too late to enter the contest, but stayed at the bar to listen and had a few cups of coffee. Around midnight, Hayes entered Ginger & Pickles looking for Williams.

Hayes invited Williams to go with him to his friend's home and Williams accepted. She rode with Hayes in his truck to a house in Paducah owned by Mark Speed who was there along with another man. The group listened to music and drank coffee. At some point during their stay, Hayes and Williams shared the last of Hayes's methamphetamine.

Williams had been at Speed's house for approximately two hours when she became concerned about the hour and asked Hayes to drive her back to her car at Ginger & Pickles. Hayes took a different route from the one they had taken earlier to get to Speed's house. When Williams asked where they were, Hayes told her he was taking a short cut. Williams testified that she did not know where she was and was scared. Hayes stopped the truck on an unlit, gravel road.

Hayes attacked Williams and pulled at her belt. Williams honked the horn and asked Hayes to stop. Hayes slammed Williams' head against the steering wheel and told her to shut up. He proceeded to perform oral sex on Williams, followed by vaginal and anal intercourse. Following the attack, Hayes took Williams back to her car.

Williams immediately stopped at a police officer's car that was parked in a lot on the side of the road. She explained what had happened and the officer led her to Western Baptist Hospital. There a rape test kit was performed and detectives were sent to the hospital. Williams named Hayes as her attacker. The medical examination revealed a small bruise on

Williams' arm and some swelling in her right knee, but the examination revealed no tearing in the vaginal or rectal canals.

Hayes was indicted for first-degree rape, first-degree sodomy, and second-degree persistent felony offender on January 21, 2000. A jury found Hayes guilty of first-degree sodomy and second-degree persistent felony offender on June 27, 2000. The charge of first-degree rape ended in a mistrial. Hayes was sentenced to ten years for the sodomy charge, which was enhanced to twenty years under the PFO II charge.

## PRIOR CONVICTION EVIDENCE

The Commonwealth provided notice in its Bill of Particulars that it planned to introduce Hayes's three-year-old misdemeanor conviction of sexual assault in the third degree as part of its case in chief. The Commonwealth argued that, since lack of consent is an element of a rape charge that the Commonwealth must prove, Hayes's prior conviction could come in as evidence of absence of mistake under KRE 404(b). Hayes filed a motion in limine requesting that the prior conviction be excluded from evidence. The trial judge ruled that if Hayes took the stand and testified that the sexual intercourse was consensual, then the Commonwealth could use the evidence of the prior conviction to impeach Hayes on rebuttal.

Hayes did not testify and the evidence of his prior conviction was never admitted into evidence. Hayes now argues on appeal that the trial court's ruling on the motion in limine was incorrect, and that as a result of the error, he was effectively precluded from testifying. However, the Commonwealth argues that the claim of error was not properly preserved at trial. We agree with the Commonwealth.

In *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), the U.S. Supreme Court dealt with a similar case. A criminal defendant, Luce, moved the trial court for a ruling to preclude the government from using a prior state conviction to impeach him if he testified. The District Court ruled that the conviction could be used by the government to impeach Luce if he took the stand and denied any prior involvement with drugs. The Sixth Circuit Court of Appeals refused to review the District Court's in limine ruling because the defendant did not testify. The U.S. Supreme Court affirmed the Sixth Circuit ruling and held that, "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Luce,* 469 U.S. at 43, 105 S.Ct. at 465, 83 L.Ed.2d. at 448; *accord Mathews v. Commonwealth,* Ky., 997 S.W.2d 449, 451–52 (1999).

In order for Hayes to have properly preserved the alleged error of the trial court, we believe that he should have taken the stand, testified—as he now argues that he would have—that the intercourse was consensual, run the risk that the prior misdemeanor conviction would have been admitted, and taken his chances on appeal if convicted. To reach the merits on this issue without Hayes's testimony would require a reviewing court to speculate as to whether prejudicial harm had occurred and to assume that the adverse ruling was the sole motivation for not testifying. We will not require a reviewing court to engage in making such tenuous assumptions and speculations. Further, as the Court in *Luce* pointed out, allowing such appeals to proceed on the merits would result in the "windfall of automatic reversal" where any error is found because, "the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." *Luce,* 469 U.S. at 42, 105

S.Ct. at 464–65, 83 L.Ed.2d at 448. As the *Luce* Court stated:

> [r]equiring that a defendant testify in order to preserve ... claims, will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction.

*Id.* We believe this logic to be sound and hold that to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.

Lastly, in *Mathews, supra,* a case involving a very similar preservation issue as the case sub judice, we held that, had the appellant testified by avowal under RCr 9.52, an appellate review on the merits would have been proper. *Mathews,* 997 S.W.2d at 452. However, upon a closer reading of RCr 9.52, it is apparent that an avowal is not appropriate in such cases. RCr 9.52 provides that:

> In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, upon request of the examining attorney the witness may make a specific offer of his or her answer to the question. The court shall require the offer to be made out of the hearing of the jury....

■ The facts of *Mathews* and the present case do not permit the application of RCr 9.52. In neither case did the trial court prevent the defendant from testifying. Rather, the defendants in both *Mathews* and the present case were free to take the stand and testify on their own behalf. While it is true that the consequences of such testimony could have led to evidence being presented that was detrimental to the defendants' cases, this is not relevant to the application of RCr 9.52. Therefore, we hold that, pursuant to RCr 9.52, avowal testimony is proper only where a witness has been *expressly* precluded from testifying, in some respect by the trial court. Conversely, an alleged error of denial of the right to testify by implication cannot be preserved by use of avowal testimony pursuant to RCr 9.52. We overrule *Mathews, supra,* to the extent that it holds otherwise.

## IMPROPER COMMENT BY THE PROSECUTOR WHILE ADDRESSING THE VENIRE

■ During voir dire, the Commonwealth told the potential jurors that Hayes only stipulated to having had sexual intercourse with Williams after blood samples and DNA test results were returned that disclosed sexual contact. Hayes's counsel objected. At sidebar, defense counsel reiterated that, from the outset, Hayes admitted to the sexual contact but claimed that it was consensual. Hayes's counsel stated that she did not want the implication made to the jury that her client had something to hide. Still at sidebar, the trial judge inquired as to how the situation could be cured. Defense counsel requested only that the Commonwealth not "finish the question." The issue was not brought up again by the Commonwealth, nor was the prosecutor's comment mentioned at any further stage of the trial. Hayes now argues that the comments of the prosecutor during voir dire so prejudiced the jury pool that a fair trial was impossible. We disagree.

At the time of the Commonwealth's misstatement to the potential jurors, Hayes could have requested that the judge admonish the jury to disregard the prosecutor's statement. Because Hayes did not request an admonition or any other curative action by the court, the Commonwealth argues that it was not incumbent

upon the trial judge to provide relief. We agree.

Hayes points out that lack of consent was the only issue in the case and that his contention that the sexual intercourse was consensual was his only defense. Due to these factors, Hayes argues that the Commonwealth's statement, which implied that he had initially denied sexual contact with Williams but then changed his story when the laboratory results demonstrated that sexual intercourse had occurred, was so prejudicial that no admonition of the trial court would have cured it. Hayes cites *Mason v. Stengell*, Ky., 441 S.W.2d 412, 416 (1969), and *Risen v. Pierce*, Ky., 807 S.W.2d 945, 950 (1991), to support his position that a new trial is required regardless of his failure to request an admonition or other forms of relief.

We first note that both *Mason* and *Risen* deal with statements made during closing argument, not voir dire questions. Moreover, in each case an admonition was requested. In *Mason*, our predecessor court held that, "as [a] general rule, if the attention of the court is called to an improper argument and if the jury is admonished in regard to it, a reversal will not be had unless it appears that the argument was so prejudicial under the circumstances that the admonition of the trial court would not cure it." *Mason*, 441, S.W.2d at 416. In the case before us, the trial judge asked defense counsel what relief she wanted. She received the relief requested and never asked for an admonition. The trial court did not err by allowing the trial to proceed.

## DIRECTED VERDICT

Finally, Hayes argues that the Commonwealth did not present enough evidence of forcible compulsion to warrant submission of the issue to the jury. "Forcible compulsion" is defined in KRS 510.010(2) as:

> physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition.

Williams' undisputed testimony included the following: (1) Hayes drove her out to an unlit, gravel road instead of taking her to her car as she had asked; (2) Hayes attacked her and continued to attack her after she requested that he stop; (3) she honked the horn of the truck to signal for help; and (4) Hayes slammed her head against the steering wheel and told her to shut up. Obviously, the Commonwealth presented enough evidence of forcible compulsion as it is defined by the statute to support the trial court's denial of Hayes's motion for directed verdict on the issue. *See Commonwealth v. Benham*, Ky., 816 S.W.2d 186 (1991).

Therefore, for the reasons stated above, we affirm the judgment of the McCracken Circuit Court.

COOPER, GRAVES, KELLER, and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., concurs in result only by separate opinion, with STUMBO, J., joining that separate opinion.

LAMBERT, Chief Justice, concurring.

Hayes did not testify by avowal in this case. Thus, the alleged error is not preserved for review under *Mathews v. Commonwealth*, Ky., 997 S.W.2d 449 (1999). For this reason, I concur with the result reached in the majority opinion. This should end the matter, but the majority opinion goes further unnecessarily and

overrules *Mathews, sua sponte.* At the very least, we should let the opportunity present itself in the form of the proper case before we consider striking sound precedent from the body of law in the Commonwealth. To do so with neither argument nor invitation is both unsound and unwarranted.

STUMBO, J., joins this concurring opinion.