RENDERED: APRIL 24, 2008
TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000154-MR

DATE 5-15-08 EliAGrouthP.C.

JULIAN CHESTNUT                                             APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE JUDITH MCDONALD-BURKMAN, JUDGE
NOS. 06-CR-003744, 06-CR-002355, 04-CR-003146,
04-CR-003038, AND 04-CR-002479

COMMONWEALTH OF KENTUCKY                                    APPELLEE

## OPINION OF THE COURT BY JUSTICE SCOTT

## REVERSING

Appellant, Julian Chestnut, was convicted by a Jefferson Circuit Court jury on four counts of burglary in the second degree, receiving stolen property over three hundred dollars, possession of a controlled substance, and illegal possession of drug paraphernalia. The jury recommended an aggregate sentence of seventy-seven (77) years imprisonment, as enhanced by persistent felony offender status. Appellant now appeals as a matter of right. Ky. Const. § 110(2)(b).

Appellant raises eight claims of error: 1) that investigative hearsay testimony was allowed at trial, violating his confrontation rights; 2) that he was denied due process because of the Commonwealth's failure to disclose an incriminating statement made by him; 3) that the trial court abused its discretion in permitting the Commonwealth's motion to join offenses; 4) that the trial court

erred in permitting the peremptory strike of a juror in violation of <u>Batson</u>; 5) that the trial court abused its discretion in allowing the introduction of prejudicial photographs; 6) that Appellant was denied his due process rights when the jury was allowed to consider excluded evidence during deliberations; 7) that the trial court erred in failing to make findings of fact at a suppression hearing; and 8) that Appellant was denied due process due to faulty jury instructions on the illegal use or possession and persistent felony offender charges. Upon review, having concluded that the Commonwealth's failure to disclose an incriminating oral statement of the defendant per RCr 7.24(1) impermissibly tainted the Appellant's defense in this case, we hereby reverse the conviction and sentencing and remand this matter for a new trial.

## I.    BACKGROUND

The following facts center on the criminal activity of Appellant, Julian Chestnut, during the course of a nine-day period in August 2004. In the early morning hours of August 18, 2004 a series of burglaries were committed on Mt. Rainier Drive in Jefferson County. At that time, officers were dispatched to respond to a call for a burglary in progress. Officer Ebersol was one of the officers who responded to the call. Once in the area, Ebersol noticed a gray Chevrolet parked outside of the residence from which the call had been made. The gray Chevrolet then started its engine and sped away. Ebersol gave chase in his cruiser, eventually catching up with the car approximately a mile later. Appellant was the driver and sole occupant of the gray Chevrolet.

Upon being stopped, Appellant told Ebersol that he was lost and had turned around in the subdivision. Subsequently, a show-up identification was

2

conducted with the owner of the residence, Anne Boldrick, and the back-up officer, Detective Mellon. Appellant was then arrested and taken for further questioning. In total, three burglaries occurred on Mt. Rainier Drive on the night in question. All burglaries were perpetrated in a similar manner and with similar items being taken, i.e. wallets, purses, money, cell phone, etc.

Appellant's partially estranged wife, Shakita, was also indicted for the Mt. Rainier burglaries and pled guilty under a complicity theory. According to Shakita's testimony, she and Appellant and had spent the day together, drinking and getting high smoking crack cocaine. Upon running out of drugs, the two decided to go get money to obtain more drugs.

Testimony indicates that the two went to a neighborhood with nice homes where Appellant told Shakita to wait in the car while he got some money from a "friend." Shakita testified that she became bored with waiting and decided to burglarize some homes. She was confronted in one of the homes by the homeowner and fled. Thereupon, she called Appellant on a cell phone which she had stolen from one of the residences. At this point, however, Appellant was already in the custody of police.

Appellant, on the other hand, claims that he was working at the Waffle House on the night in question, and that he was only in the area to pick up Shakita, who called him indicating that she had burglarized some homes and needed a ride. Appellant denied ever being in the Mt. Rainier subdivision.

On August 13, 2004, the home of Richard LeBlanc on Falls Creek Rd., was burglarized. In the early morning hours, Richard's son noticed a gray Chevrolet parked in front of the house. Upon waking, the family noticed that a

3

purse, laptop computer, and some distinctive, personalized men's jewelry were missing. A pawn shop record showed Appellant pawned the jewelry.

On August 20, 2004, a home was burglarized on Mockingbird Lane in Jefferson County. Additionally, their black Lexus sedan was stolen. Two days later on August 22, 2004, officers on narcotics patrol in west Louisville pulled the black Lexus over. Appellant was the passenger in the car. Upon being stopped, testimony indicates Appellant shouted to the driver "go, go, go!" Appellant had a key to the Lexus in his pocket along with a bag of cocaine and a used crack pipe. The Lexus was the same automobile stolen from the Mockingbird Lane residence two days earlier.

## II.    ANALYSIS

### A. Appellant's confrontation rights were not denied because the testimony was non-hearsay offered for the purpose of explaining the development of Appellant as a suspect in the case and thus not investigative hearsay.

Appellant argues that testimony presented at trial by Officers Ebersol and Mellon is investigative hearsay, and that, as such, his confrontation rights were violated by its admission. We disagree.

During trial Appellant objected to the introduction of certain testimony by Officer Ebersol indicating that after the stop of Appellant in the Mt. Rainier Dr. area, a "show-up" identification was held. Additionally, Appellant objected to testimony by Detective Mellon that he took Ms. Boldrick to the scene of the stop to conduct the "show-up" identification, and that the purpose of a "show-up" is to see if a witness can identify a suspect. The officers also testified that Appellant was arrested following the "show-up." The trial judge sustained Appellant's

4

objections to the extent that no hearsay statements of Ms. Boldrick regarding identification would be admissible. Thus, no identification testimony was presented regarding what Ms. Boldrick said about Appellant.

It is well-established that investigative hearsay is still, fundamentally, hearsay and, thus, disallowed. See, e.g., Sanborn v. Commonwealth, 754 S.W.2d 534, 541 (Ky. 1988), overruled on other grounds by Hudson v. Commonwealth, 202 S.W.3d 17 (Ky. 2006). However, it is equally evident that not all testimony from a police officer concerning an investigation is hearsay.

This Court accepted the plurality holding of Sanborn regarding investigative hearsay and the verbal acts doctrine in Brewer v. Commonwealth, 206 S.W.3d 343, 351 (Ky. 2006), therefore rendering it binding precedent. Thus, the rule on investigative hearsay which Sanborn announced proves dispositive. "The rule is that a police officer may testify about information furnished to him only where it tends to explain the action that was taken by the police officer as a result of this information *and* the taking of that action is an issue in the case." Sanborn, 754 S.W.2d at 541. Such testimony is then admissible not for proving the truth of the matter asserted, but to explain why a police officer took certain actions. Young v. Commonwealth, 50 S.W.3d 148, 167 (Ky. 2001). However, Sanborn places a short leash on the extent to which investigative hearsay, or as more appropriately styled, investigative verbal acts, may be used. It limits such testimony

> to circumstances where the taking of action by the police is an issue in the case and where it tends to explain the action that was taken as a result of the hearsay information. In such circumstances, hearsay may be admissible to prove why the police acted in a certain manner, but not to prove the facts given to the officer.

<u>Gordon v. Commonwealth</u>, 916 S.W.2d 176, 179 (Ky. 1995).

Here, development of Appellant as a suspect in the case, and his subsequent arrest were certainly at issue, particularly in light of Appellant's testimony at trial. Appellant testified that he was never in the Mt. Rainier subdivision. However, at trial, testimony was presented that police saw a gray Chevrolet in the area of the burglary call they responded to, that the car drove away and was pursued by the police and subsequently stopped. Moreover, Appellant accused Officer Ebersol of lying during his testimony. Therefore, why the police arrested Appellant was clearly at issue.

Thus, the complained of testimony concerning the show-up identification also served to explain Appellant's arrest. The testimony was not offered to prove the truth of what Boldrick told the officers. Rather, it was offered to prove the officers' *motive* for arresting Appellant. In the present instance, what was not said concerning the "show-up" identification is as important as what was said. There was no hearsay testimony presented purporting to show that what Boldrick told the officers was true or untrue. The officers' testimony concerned only what they did on the night in question, not that Boldrick identified the Appellant. Therefore, Appellant was not denied his right to confrontation. <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); <u>Norton v. Commonwealth</u>, 890 S.W.2d 632, 635 (Ky. 1994) (noting that the admissibility of out of court statements for non-hearsay purposes does not violate the confrontation clause). Therefore, there was no error here.

**B. The trial court committed reversible error in admitting Appellant's oral statements withheld in violation of RCr 7.24(1), effectively destroying the credibility of the whole defense.**

6

**1.** **The Commonwealth should have disclosed Appellant's incriminating oral statements during discovery irrespective of the fact that such statement had not been reduced to writing.**

Appellant argues that the Commonwealth presented testimony which they were bound to disclose to him under RCr 7.24(1), and thus the trial court's admission of said testimony was error. We reluctantly agree.

Detective Wright interviewed Appellant at the police station following his arrest. During that interview, Appellant admitted to Detective Wright that he waited outside as his wife burglarized homes. Appellant now asserts that certain testimony presented at trial by Wright concerning these previously undisclosed oral statements made by the Appellant was given in violation of RCr 7.24(1). RCr 7.24(1) states in pertinent part that

> the attorney for the Commonwealth *shall disclose* the substance, including, time, date, and place, of any oral incriminating statement known by the attorney for the Commonwealth to have been made by a defendant to any witness, *and* to permit the defendant to inspect and copy or photograph any relevant (a) *written or recorded* statements or confessions made by the defendant, or copies thereof, that are known by the attorney for the Commonwealth to be in the possession, custody, or control of the Commonwealth

RCr 7.24(1) (emphasis added). Admittedly, this Court has previously held that the first part of RCr 7.24(1) applies only to written or recorded oral statements. Berry v. Commonwealth, 782 S.W.2d 625, 627 (Ky. 1990) ("RCr 7.24 applies only to written or recorded [oral] statements."); Partin v. Commonwealth, 918 S.W.2d 219, 224 (Ky. 1996) (finding that no substantive changes had been made to RCr 7.24 that would affect the Court's ruling in Berry, and thus finding no error in the trial court allowing testimony of previously undisclosed oral statement). However, although we upheld these previous decisions in Matthews v. Commonwealth, 997 S.W.2d 449, 451 (Ky. 1999), overruled on other grounds by

7

Hayes v. Commonwealth, 58 S.W.3d 879, 882 (Ky. 2001), we were troubled by the result and began to question the soundness of the line of reasoning these prior opinions espoused. See infra.

Truly, we are heedful of the doctrine of *stare decisis*. "[S]*tare decisis* [is] the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion." Vasquez v. Hillary, 474 U.S. 254, 265-265, 106 S.Ct. 617, 624, 88 L.Ed.2d 598 (1986). Thus, it is with anything but a cavalier attitude that we broach the subject of changing the ebb and flow of settled law. However, we do not feel that the doctrine compels us to unquestioningly follow prior decisions when this Court finds itself otherwise compelled. "The doctrine of stare decisis, like almost every other legal rule, is not without its exceptions. It does not apply to a case where it can be shown that the law has been misunderstood or misapplied, or where the former determination is evidently contrary to reason." Payne v. City of Covington, 276 Ky. 380, 123 S.W.2d 1045, 1050-1051 (1938). While the doctrine does guide us to decide every case with a respect for precedent, it does not demand that this Court be precluded from change.

Looking at the plain language of RCr 7.24(1) stating that, "the Commonwealth shall disclose . . . any oral incriminating statement . . . made by a defendant," we find that it is apparent from a reading of the language of the rule, that RCr 7.24(1) was intended to apply to both oral and written statements, which were incriminating at the time they were made. Consequently, to the extent that Berry, and its progeny Partin and Matthews hold that RCr 7.24(1) does not apply to a defendant's oral incriminating statements, they are overruled. We simply

8

cannot in good faith square such a counterintuitive reading of the rule's manifest intention. The Commonwealth's ability to withhold an incriminating oral statement through oversight, or otherwise, should not permit a surprise attack on an unsuspecting defense counsel's entire defense strategy. Such a result would run afoul of the clear intent of RCr 7.24(1).

Accordingly, we now conclude that nondisclosure of a defendant's incriminating oral statement by the Commonwealth during discovery constitutes a violation of the discovery rules under RCr 7.24(1), since it was plainly incriminating at the time it was made.[1]

As such, we find this Court's reasoning in the dissent in Matthews to be persuasive.

> There are two clear parts to RCr 7.24(1)(a). The first requires that the Commonwealth "disclose the substance of any oral incriminating statement ... made by a defendant to any witness." The second mandates that the Commonwealth give the defendant access to "any relevant written or recorded statements." The reason that it is clear there are two separate parts to RCr 7.24(1)(a) is that the conjunction "and" is employed in the middle of the rule. Accordingly, there are two separate burdens imposed by RCr 7.24(1)(a).
>
> RCr 7.24(1)(a) demands disclosure of "any incriminating statement." This is not a vague or complex concept. Basically anything that the defendant has said to a witness which in any way incriminates himself or herself must be disclosed to the defense. This part of the rule does not require that the statement even be recorded, simply that the Commonwealth know of the statement.

Mathews, 997 S.W.2d at 454 (Stephens, J., dissenting). In Matthews, the dissent notes that when the appellant did not learn that the Commonwealth was in possession of his incriminating statements until trial, his rights were

---

[1] This ruling would not be applicable to non-incriminating or innocuous statements made by defendant prior to trial which only become incriminating in the context of testimony at trial.

impermissibly violated. Id. at 454 (Stephens, J., dissenting). Justice Stephens reasons therein, that such impermissible violation of one's rights constitutes reversible error in his estimation. Id. at 453-454. Today, we are inclined to agree.

Having concluded that such action constitutes a violation of the discovery rules in that the statements were incriminating, we next turn to whether the trial court erred in allowing the introduction of Appellant's statements, and whether such error mandates reversal. The United States Supreme Court has held that a discovery violation serves as sufficient justification for setting aside a conviction when there is a reasonable probability that if the evidence were disclosed the result would have been different. Wood v. Bartholomew, 516 U.S. 1, 5-6, 116 S.Ct. 7, 10, 133 L.Ed.2d 1 (1995) (quoting Kyles v. Whitley, 514 U.S. 419, 433-444, 115 S.Ct. 1555, 1565-1566, 131 L.Ed.2d 490 (1995)); see also Weaver v. Commonwealth, 955 S.W.2d 722, 725-726 (Ky. 1997).

Here, Appellant asserts that had the incriminating statement been disclosed prior to trial, there was a reasonable probability that the result would have been different. Specifically, he argues that the Commonwealth's failure to turn over the statement served to fatally undermine his whole defense by permitting the Commonwealth to introduce a surprise confession in an otherwise circumstantial case, which directly refuted testimony proffered by both Appellant and Shakita. Appellant contends that the failure to disclose the statement induced him to rely on a defense strategy he may not have otherwise asserted and denied his right to due process of law.

10

However, before such a determination can be made, we must turn to the question of whether, despite the Commonwealth's violation in failing to turn over Appellant's oral statement, the trial court properly admitted such testimony in rebuttal.

**2.     Presentation of undisclosed evidence in violation of RCr 7.42(1) under the guise of rebuttal evidence pursuant to RCr 9.42 constitutes reversible error.**

The Commonwealth asserts that even if the failure to disclose the statements was a discovery violation, the statements could be used in rebuttal. However, the duty of discovery imposed by RCr 7.24(1) to disclose incriminating statements does not end at the close of the Commonwealth's case in chief. Rebuttal does not offer a protective umbrella, under which prosecutors may lay in wait. "A cat and mouse game whereby the Commonwealth is permitted to withhold important information requested by the accused cannot be countenanced." James v. Commonwealth, 482 S.W.2d 92, 94 (Ky. 1972).

That the statements were Appellant's own is immaterial. The premise underlying RCr 7.24(1) is not only to inform the defendant that *he* has made these statements, as he should be clearly aware, but rather to inform the defendant (and to make sure his counsel knows) that the Commonwealth is aware that he has made these statements. This ensures that the defendant's counsel is capable of putting on an effective defense, as per the intent of the rule. See Anderson v. Commonwealth, 864 S.W.2d 909, 914 (Ky. 1993) (holding that Commonwealth's failure to disclose incriminating statement "denied the defense the opportunity to prepare for and refute the incriminating evidence by cross-

11

examination or other proof"). This holds true regardless of whether the incriminating statements are written or oral.

The Commonwealth likens the present situation to the instances of tainted evidence under Miranda violations, as addressed by the United States Supreme Court in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). In Harris, the Court reasoned that statements which were precluded from entering into the prosecutor's case in chief, because of a failure to comply with the procedural protections of Miranda, could nonetheless be used for impeachment purposes. The Court articulated that in these instances, the exclusionary rule would offer sufficient protections, both in its preclusion of admitting evidence during the prosecutor's case in chief and in curbing impermissible police conduct. Harris, 401 U.S. at 225, 91 S.Ct. at 645.

However, in the present instance we are not confronted with Miranda violations, of which the defendant and his counsel would be aware. Moreover, protections such as the exclusionary rule are not in place. Instead, we are faced with a violation of discovery rules under RCr 7.24(1) and the potential for the late introduction of evidence which is then destructive of the credibility of the entire defense. See Wood, 516 U.S. at 5-6, 116 S.Ct. at 10. Furthermore, absent the protections of RCr 7.24(1), there is nothing to curb the errant prosecutor who may strategically violate the rule in an attempt to surprise a defendant with an undisclosed statement.

This is not to say that a defendant is permitted to take the stand and commit perjury without recourse. Indeed, a criminal defendant who testifies in his own defense is bound by the same rights and repercussions as every other

12

witness in a court of law, and may rightfully be subject to impeachment or any other available remedy. However, we cannot say that when evidence is withheld in violation of the rules of this Court, that they may be permissibly used under the pretext of rebuttal without consequence.

Assuredly, the trial court is granted broad discretion in its determination on the admissibility of evidence in rebuttal under RCr 9.42. Pilon v. Commonwealth, 544 S.W.2d 228, 231 (Ky. 1976). Therefore, the test for admission of evidence is an abuse of discretion. Commonwealth v. King, 950 S.W.2d 807, 809 (Ky. 1997). However, by permitting evidence to be admitted on rebuttal which was withheld from the defense in violation of the rules, we find that the trial court abused its discretion in this instance. Surely, there may be some cases where such introduction will be harmless, yet we are not convinced such was the case here. Therefore, Detective Wright's testimony was improperly placed before the jury at trial as rebuttal evidence.

In Akers v. Commonwealth, 172 S.W.3d 414, 417-418 (Ky. 2005), this Court held that the Commonwealth's RCr 7.24 discovery violation mandated reversal as it prejudiced the appellant's ability to properly prepare a defense. This Court noted that if the Commonwealth had provided the withheld evidence, it is doubtful "defense counsel would have proceeded in the same manner or the jury would have reached the same result." Id.

Likewise, in Grant v. Commonwealth, --- S.W.3d ---, 2008 WL 199711 *4 (Ky. 2008), this Court was recently presented with a closely analogous situation, wherein the Commonwealth attempted to introduce a defendant's undisclosed incriminating statements in rebuttal. In Grant, we concluded that the

13

Commonwealth's withholding of the appellant's statement until after he had put on his defense, prevented counsel from making an informed decision as to an appropriate defense strategy, therefore requiring reversal. Id.

Here, Appellant's defense consisted of his testimony at trial. When questioned concerning the Mt. Rainier subdivision burglaries, Appellant denied any participation. However, prior testimony indicated that Appellant had told police that he had gotten lost and entered the subdivision to turn around. Appellant never mentioned working that night, nor did he mention to police that he was in the subdivision to pick up his wife. However, he testified at trial that he explained his presence on the night in question to Detective Wright, claiming that he was merely there to pick up his wife, and that he never entered the subdivision where Mt. Rainier is located. Moreover, he testified that he was working at the Waffle House on the night in question prior to being stopped. On rebuttal, over Appellant's objection, the Commonwealth called Detective Wright. Detective Wright testified that after Appellant was transported to the police substation and further questioned, he admitted that he was in the subdivision and that he waited outside in the car while his wife burglarized homes. He testified that Appellant's oral statement was never reduced to writing.

Consequently, Wright's testimony concerning Appellant's confession essentially gutted Appellant's defense. For this reason, we cannot say that had Appellant been presented with this information prior to trial, he would have proceeded with his defense in the same manner or that the trial would have achieved the same result. Grant, --- S.W.3d ---, 2008 WL 199711 *4 ("While we cannot say with certainty that the result at trial would have been different, we can

14

say that Appellant's defense to the charges would have been different, and we cannot conclude that the jury would have reached the same result."); see also Akers, 172 S.W.3d at 417 ("We cannot reasonably conclude that, had Akers' been provided the assault report, defense counsel would have proceeded in the same manner or the jury would have reached the same result.") As such, we find that because the trial court abused its discretion in allowing the admission of the statements in violation of RCr 7.24(1), and because we find it reasonably likely that had the evidence been disclosed, Appellant's defense, and potentially the result, would have been different, we cannot find the error harmless.

Having determined that Appellant's convictions should now be reversed, we will consider the remaining issues as such may, or will, recur on retrial.

### C. Appellant was not unduly prejudiced by joinder of the charges against him, and the trial court's error in regard to the source of the stolen vehicle was harmless.

Appellant also argues that the trial court abused its discretion in permitting the various charges against him to be joined together and heard in a single trial. We disagree.

RCr 6.18 states that two or more offenses may be charged in the same indictment "if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." A trial judge has broad discretion concerning the joinder of indictments for trial, and absent a clear demonstration of abuse of that discretion, the trial judge will not be overturned. Violett v. Commonwealth, 907 S.W.2d 773, 775 (Ky. 1995). Offenses that stem from closely related events and

which occur within a short period of time may be properly joined in one indictment. See Pennington v. Commonwealth, 479 S.W.2d 618, 619 (Ky. 1972).

Further, RCr 9.12 sets forth the standard to be applied by a trial judge in determining whether joined offenses may be tried together or separately. RCr 9.12 indicates that two or more offenses may be tried together "if the offenses . . . could have been joined in a single indictment." Again, here, the trial judge has broad discretion in determining whether charges should be joined for trial, and such a decision should not be overturned absent a showing of prejudice and clear abuse of that discretion. Sherley v. Commonwealth, 889 S.W.2d 794, 800 (Ky. 1994). RCr 9.16 mandates that a separate trial is in order if joinder of the offenses would result in undue prejudice to either party. A conviction based on joinder of offenses should only be reversed if there is a clear showing of abuse of discretion and prejudice to the defendant. Seay v. Commonwealth, 609 S.W.2d 128, 131 (Ky. 1980). It is well-established that joinder is proper under RCr 6.18 and RCr 9.12 when "the crimes are closely related in character, circumstance, and time." Id.

Appellant's charges all occurred within a close temporal period. Appellant was charged with the Falls Creek burglary occurring on August 13, 2004. The three Mt. Rainier burglaries happened on August 18, 2004. Appellant was then stopped on August 22, 2004, in a stolen car with both the keys to the stolen car and drugs in his pocket.

Joinder in this instance was proper and not an abuse of discretion, nor overly prejudicial to Appellant. All of the charges stemmed from criminal activity taking place within a nine-day period in close geographic proximity in Jefferson

16

County. Moreover, the circumstances surrounding the events suggested a common plan or scheme. The trial court found that the separate offenses were part of a common course of conduct and motive whereby Appellant burglarized and stole from residences, pawning the stolen property to finance his drug habit of using and selling drugs. The court articulated that all of the burglaries occurred in the same area of town, and that the charges served to explain an enmeshed source of motive, one for the other.

Thus, the trial court did not abuse its discretion in permitting joinder despite a factual error on the court's behalf. Appellant correctly asserts that the trial court was erroneous in their belief that the stolen car was from one of the Falls Creek or Mt. Rainier burglaries. In fact, the car was stolen from another location, the burglary of which Appellant was indicted for, but acquitted.

That being said, a sufficient nexus of factual and schematic evidence existed between all of the charges joined. Thus, separate trials would be unnecessary, notwithstanding the factual error of the trial court, as evidence from each offense would have been admissible in either trial, even if conducted separately. See Russell v. Commonwealth, 482 S.W.2d 584, 588 (Ky. 1972) ("An important factor in determining whether a joinder of offenses for trial is prejudicial is whether the evidence of one of the offenses would be admissible in a separate trial for the other offense. If the evidence is admissible, the joinder of offenses, in most instances, will not be prejudicial."). Here, there was neither a demonstration of an abuse of discretion, nor a clear showing of undue prejudice. See Harris v. Commonwealth, 556 S.W.2d 669, 670 (Ky. 1977).

**D. The trial court was correct in its determination that there was no Batson violation during voir dire.**

17

Appellant argues that a prospective African-American juror was struck in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d. 69 (1986), thus violating his Sixth and Fourteenth Amendment rights. Appellant's argument lacks merit as it is unsupported by the facts at trial.

The United States Supreme Court, in Batson, articulated a three-step process for determining whether the state's use of peremptory challenges violates the Equal Protection Clause. A defendant first has the burden of making a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if this showing is made, then the burden shifts to the prosecutor to articulate a race-neutral reason for striking the juror in question; and third, the trial court must then determine whether the burden of proving purposeful discrimination has been met. Id. at 96-98, 106 S.Ct. at 1723-1724. "Batson was not intended to remove all prosecutorial discretion in peremptory strikes, but rather to eliminate the odious practice of eliminating potential jurors simply because of race." Washington v. Commonwealth, 34 S.W.3d 376, 379 (Ky. 2000).

Admittedly, jurisdictions are divided as to whether and to what extent an explanation is required upon an allegation of discrimination in the use of peremptory challenges, and many states have declined to proffer a bright line requirement as to under what circumstances a race-neutral justification is required. See 50A C.J.S. Jury § 451 (2008). However, if a court can point to certain circumstances in the record which indicate that the prosecution has not exercised peremptory challenges in a discriminatory manner, then a race-neutral justification may not be required. See Valentine v. State, 616 So.2d 971, 974

18

(Fla. 1993). Moreover, some courts have held that the burden of a prima facie showing of discrimination has not been met until the trial court asks for a race-neutral justification. See State v. Newell, 132 P.3d 833, 845 (Ariz. 2006).

We believe, however, it is the circumstances which raise the inference and thus establish the threshold requirement. Here the court correctly reasoned that the objection was premised upon a confusion regarding the two jurors, thus no prima facie showing occurred. Commonwealth v. Hardy, 775 S.W.2d 919, 920 (Ky. 1989). Therefore, the burden of going forward, in this instance, did not shift to the Commonwealth to provide a race-neutral justification for this peremptory strike.

During voir dire, there were two African Americans on the panel. The Commonwealth used eight of its nine peremptory challenges to strike prospective jurors of other races. The Commonwealth struck juror number thirty-two (32), one of the two African-Americans, with one of its nine peremptory challenges. Appellant then objected and asked for a race-neutral justification for striking juror number thirty-two (32) in line with Batson. The Commonwealth, indicating that it took these allegations very seriously, asked that Appellant establish a prima facie case of racial discrimination.

Appellant then argued that juror number thirty-two (32) had answered several questions in a manner that would indicate that she would be a good juror. The trial judge then asked Appellant's counsel if he were confusing juror number thirty-two (32) with juror number twenty-one (21). Both jurors were African-American females. The court explained that juror number thirty-two (32) had answered no questions at all, that it was juror number twenty-one (21) which had

19

given those answers. The Commonwealth did not strike African-American juror number twenty-one (21). She did, in fact, serve on the jury during trial.

Appellant conceded that he may have confused the two jurors. Appellant, however, stood on his objection as to juror number thirty-two (32). Appellant said that he would offer what he had already stated (meaning that juror number thirty-two had answered questions well), and added, "if I'm mistaken then I'm mistaken." The judge then stated that, "the record will be clear, seat number twenty-one answered quite articulately . . . but number thirty-two made no responses to anything." Plainly, the court did not require the Commonwealth to provide a race-neutral reason for striking juror number thirty-two (32) because the record was clear that Appellant's objection was due to his confusion. See Valentine, 616 So.2d at 974.

Appellant now argues that although juror number thirty-two (32) did not answer any questions, she listened attentively and nodded approvingly at several occasions, thus a race-neutral justification was required. On appellate review, a trial court's denial of a Batson challenge will not be reversed unless clearly erroneous. Hernandez v. New York, 500 U.S. 352, 369, 11 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Washington, 34 S.W.3d 376, 379-380. "Because the trial court is the best 'judge' of the Commonwealth's motives in exercising its peremptory strikes, great deference is given to the court's ruling." Gray v. Commonwealth, 203 S.W.3d 679, 691 (Ky. 2006) (citing Wells v. Commonwealth, 892 S.W.2d 299, 303 (Ky. 1995)).

Here, Appellant failed to meet the threshold requirement demonstrating a prima facie showing that the Commonwealth exercised a peremptory challenge

on the basis of race as required under Batson, since the circumstances did not reach a prima facie violation. Batson, 476 U.S. at 96-98, 106 S.Ct. at 1723-1724. Thus, the Commonwealth was not required to proffer a race-neutral justification.

Given the Appellant's obvious confusion and his conceded misidentification of the two African-Americans, the trial court was not clearly erroneous in its denial of Appellant's objection. Appellant's argument is without merit.

**E. Photographs of the interior of Appellant's car were properly admitted as they were relevant and not unduly prejudicial.**

Appellant claims that he was unduly prejudiced at trial by the admission of photographs of the interior of his car on the night he was arrested for burglary. We disagree.

Evidence, of any nature, must clear two preliminary hurdles in order to be admissible. First, it must be relevant. Robert G. Lawson, The Kentucky Evidence Law Handbook § 2.00, 77 (4th ed. 2003). Second, its prejudicial effect must not substantially outweigh its probative value. KRE 403. Mere prejudice alone will not exclude a relevant photograph; the prejudicial effect must be substantial. In this regard, a trial judge has broad discretion in determining the admissibility of photographic evidence. Woodall v. Commonwealth, 63 S.W.3d 104, 130 (Ky. 2001). The general rule is that relevant pictures are not rendered inadmissible even when the photographs depict gruesome or heinous images of a crime. E.g., Brown v. Commonwealth, 558 S.W.2d 599 (Ky. 1977).

Here, the complained of photographs were neither heinous, nor gruesome, nor overly prejudicial. Appellant claims that the photographs depicting the interior of his car portrayed an unopened condom on the seat,

causing extreme prejudice. However, the photographs also depict the way the car appeared on the night of Appellant's arrest, upon leaving the scene of a burglary. The photographs also depict other contents of the car, including a flashlight. The prejudice, *if any*, suffered by Appellant is certainly outweighed by the photograph's probative nature. There was no error in allowing admission of the photograph.

### F. The trial court committed error in allowing excluded evidence into the jury room during deliberations.

Appellant argues prejudice in that the jury was allowed to consider evidence, during deliberations, which was specifically excluded from the record. We agree.

During deliberations the jury was permitted, pursuant to RCr 9.72, to take back a pawn shop record which contained evidence indicating that Appellant had pawned jewelry from the Falls Creek burglary. However, the pawn shop record also contained a receipt showing an unrelated pawn ticket of a men's bracelet three days before the Falls Creek burglary. Appellant objected to its inclusion, and the trial court ordered that portion of the pawn record redacted. However, the complained of portion was not actually redacted and was allowed to go back with the jury. This was error which should not reoccur.

### G. The omitted record as to the pretrial suppression hearing supports the decision of the trial court.

Appellant argues that the trial court erred by failing to render findings of fact at a pretrial suppression hearing, thus mandating reversal. Appellant's argument is without merit.

22

Initially, it should be noted that the record is incomplete as to the evidentiary suppression hearing for the Mt. Rainier burglaries. At trial, Appellant moved to suppress physical evidence, statements, and identifications made pursuant to the stop following the Mt. Rainier burglaries, and to suppress evidence from the drug case. RCr 9.78 states:

> If at any time . . . a defendant moves to suppress. . . evidence consisting of (a) a confession or other incriminating statements alleged to have been made by the defendant to police authorities, (b) the fruits of a search, or (c) witness identification, the trial court shall conduct an evidentiary hearing . . .and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact raised by the motion or objection and necessary to support the ruling. If supported by substantial evidence the factual findings of the trial court shall be conclusive.

Indeed, RCr 9.78 necessitates an evidentiary hearing and entry into the record of findings of fact. Appellant does not claim that an evidentiary hearing did not occur. Appellant argues that because the record lacks *proof* of the findings, reversal is mandated. This is not so.

The video record is incomplete as to portions of the suppression hearing; therefore to say that proof was not entered would be presumptuous at best. This Court is not in the business of making baseless presumptions. It is incumbent upon Appellant to present the Court with a complete record for review. See Steel Technologies, Inc. v. Congleton, 234 S.W.3d 920, 926 (Ky. 2007); Davis v. Commonwealth, 795 S.W.2d 942, 948-949 (Ky. 1990). When the record is incomplete, this Court must assume that the omitted record supports the trial court. Commonwealth v. Thompson, 697 S.W.2d 143, 145 (Ky. 1985). "We will not engage in gratuitous speculation as urged upon us by appellate counsel, based upon a silent record." Id.

23

In Davis, this Court examined RCr 9.78 hearings on suppression motions and the standard for appellate review of such motions. 795 S.W.2d at 948. The appellant in Davis claimed error, but the record lacked any transcript of the suppression hearing. Id. The Court stated that they would not entertain the appellant's claim of error, because she had failed to avail herself of CR 75.13. Id. at 949. Cr 75.13 allows an appellant to prepare a narrative statement "for use . . . as a supplement to or in lieu of an insufficient electronic recording" of a suppression hearing. CR 75.13(1). The Court articulated:

> [a]ppellant has failed to show that the ruling below was not supported by substantial evidence. "In the absence of any showing to the contrary, we assume the correctness of the ruling by the trial court." It is the duty of a party attacking the sufficiency of evidence to produce a record of the proceeding and identify the trial court's error in its findings of fact. Failure to produce such a record precludes appellate review.

Id. (quoting Harper v. Commonwealth, 694 S.W.2d 665, 668 (Ky. 1985)).

Here, Appellant has similarly failed to avail himself of CR 75.13. Moreover, Appellant has failed to provide this Court with a complete record for review. As such, we are bound to assume that the omitted record supports the decision of the trial court. Thompson, 697 S.W.2d at 145. Therefore, pursuant to RCr 9.78, the factual finding of the trial court would be conclusive.

### H. Complained of jury instructions did not render Appellant's trial fundamentally unfair, nor did they permit the Commonwealth to avoid proving every element of the crimes charged.

Appellant argues that jury instructions pertaining to the illegal use or possession of drug paraphernalia tendered to the jury were improper as they precluded the Commonwealth from proving beyond a reasonable doubt all statutory elements of the offense. Further, Appellant argues that the jury

24

instructions regarding the first-degree persistent felony offender instruction tendered to the jury was likewise insufficient. We disagree in both instances.

Appellant contends that the jury instruction concerning the illegal possession of drug paraphernalia charge lacks the intent element and thus deprives him of constitutional rights. Admittedly, RCr 9.54(2) provides that "no party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge" by proper objection, or unless the party specifically states grounds for objection before the jury is instructed. This Court has consistently regarded failure to comply with the requirements of RCr 9.54(2) as precluding review. Commonwealth v. Thurman, 691 S.W.2d 213, 216 (Ky. 1985); Johnson v. Commonwealth, 105 S.W.3d 430, 435 (Ky. 2003); Chumbler v. Commonwealth, 905 S.W.2d 488, 499 (Ky. 1995). Although Appellant's argument is unpreserved for appellate review under RCR 9.54, we will nonetheless examine the substance of Appellant's allegation for sake of clarity upon retrial.

Appellant argues that omission of the intent element from the instructions violated his due process rights by avoiding the Commonwealth's obligation to prove every element of an offense beyond a reasonable doubt. However, the United States Supreme Court has stated that "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (U.S. 1999). The Court in Neder specifically rejected appellant's position that omission of an

element from a jury instruction amounted to a *de facto* rendition of an unfair trial. Id. at 13-15.

Here, in the court's instruction on illegal possession of drug paraphernalia, the jury was instructed to find guilt if it believed:

A.        That in this county on or about August 22, 2004 he had in his possession a pipe; AND

B.        That said pipe constituted drug paraphernalia, *as defined in Instruction No. 10*

Jury instruction No. 10 defined drug paraphernalia as "all equipment, products and material of any kind which are used, *or intended for use* . . . in . . . ingesting . . . into the human body a controlled substance." Clearly, the instruction defining drug paraphernalia was a concomitant aspect of the guilt instruction, which directly referenced the definitional instruction. See Crawley v. Commonwealth, 107 S.W.3d 197, 200 (Ky. 2003) (holding that the intent element for complicity can be satisfied by a separate definition of complicity elsewhere in the instructions).

Appellant argues that the instruction was flawed because it did not include an intent element. However, in order for the jury to determine that the pipe was drug paraphernalia under the definition provided in the instruction, it was also required to conclude that it be used or was intended to be used to consume a controlled substance. Therefore, the intent element was incorporated in the paraphernalia definition. The pipe could not have been found paraphernalia without the jury simultaneously determining that Appellant intended to use the pipe for drugs. Because the intent element was satisfied within another

26

definition, the complained of instruction did not render the trial fundamentally unfair.

Similarly, Appellant argues that the persistent felony offender instruction permitted the Commonwealth to circumvent its obligation of proving every fact necessary to constitute a crime beyond a reasonable doubt. Appellant claims that due to a clerical error concerning the date of a prior conviction, the jury was instructed improperly as to his prior offenses. As before, this issue is unpreserved for appellate review under RCr 9.54 and Thurman. 691 S.W.2d at 216.

However, we will once again examine the merits of Appellant's argument. The crux of Appellant's contention is that the Commonwealth failed to prove persistent felony offender status because the jury instructions listed the date of a prior burglary conviction as June 9, 1991, when the actual date of the conviction was June 20, 1991. Such argument bears no weight, as there was uncontroverted evidence presented that Appellant had two prior convictions. Appellant suffered no prejudice due to the clerical error regarding the date of the conviction.

As this Court stated in Howe v. Commonwealth, 462 S.W.2d 935, 938 (Ky. 1971), when addressing a clerical error of date in a jury instruction, "[w]e are of the opinion that the error in the date did not affect the substantial rights of the accused and that he was not prejudiced by this inadvertent mistake." Likewise, although review under RCr 10.26 on this matter is not compulsory, we find no prejudice and no error. Appellant's arguments in both instances are without merit.

27

### III.  CONCLUSION

For the preceding reasons, set out in section II(B) of this opinion, Appellant's conviction on four counts of burglary in the second degree, trafficking in a controlled substance and illegal possession of drug paraphernalia are reversed and remanded for a new trial.

Lambert, C.J.; Cunningham, Minton, Noble, and Schroder, JJ., concur. Abramson, J., not sitting.

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Louisville Metro Public Defender
200 Advocacy Plaza
719 West Jefferson Street
Louisville, KY 40202

Cicely Jaracz Lambert
Deputy Appellate Defender
200 Advocacy Plaza
719 West Jefferson Street
Louisville, KY 40202


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601