RENDERED:  DECEMBER 11, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0689-MR

TRENARD BIVENS                                                            APPELLANT


APPEAL FROM HARDIN CIRCUIT COURT
v.           HONORABLE KELLY MARK EASTON, JUDGE
ACTION NO. 18-CR-00795


COMMONWEALTH OF KENTUCKY                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; KRAMER AND MCNEILL, JUDGES.

CLAYTON, CHIEF JUDGE:  Trenard Bivens[1] appeals from a judgment and

sentence entered by the Hardin Circuit Court after a jury found him guilty of

fleeing and evading police, wanton endangerment, and being a persistent felony

---

[1] On the first day of trial, the Commonwealth moved to amend the indictment to change the spelling of the defendant's surname from "Bivens" to "Bivins."  In the notice of appeal, however, the appellant's surname is spelled "Bivens."  For the sake of consistency, we have adopted the spelling used in the notice of appeal.

offender, all in the first degree. Bivens argues that the admission into evidence of a recording of inculpatory remarks he made in a telephone conversation and testimony from the victim that he had apologized to her were discovery violations under Kentucky Rules of Criminal Procedure (RCr) 7.24. As further grounds for reversal, he argues that the admission of evidence that cash and marijuana were recovered from his person and from a vehicle in which he was a passenger violated Kentucky Rules of Evidence (KRE) 404(b). Having reviewed the record and the applicable law, we affirm.

On the evening of June 8, 2018, Sergeant Jeremy Mabe of the Kentucky State Police was operating a speed trap on Interstate 65 north of Elizabethtown. He pulled over a blue Escalade traveling southbound after his radar clocked its speed at 95 miles per hour. When Sergeant Mabe approached the open passenger side window of the vehicle, he smelled marijuana. He saw Bivens sitting in the passenger seat and De'ontae Swain in the driver's seat. Swain handed over his driver's license but Bivens claimed not to have any form of identification and gave his name as Brent Watkins. Sergeant Mabe ran Swain's license and discovered he had an active arrest warrant. He told Swain to get out and instructed Bivens to remain in the passenger seat with his seatbelt fastened. Swain walked over to the police cruiser and placed his hands on it. As Sergeant Mabe was

arresting Swain, he heard the engine of the Escalade start and saw the vehicle depart southbound at high speed.

Charles Casey and his wife were driving southbound on the interstate at that time and saw a state trooper had pulled over a vehicle. They observed someone move from the passenger seat into the driver's seat. The Caseys continued traveling at about 75 miles per hour, and ten minutes later saw the Escalade fly past as if they were standing still.

Sergeant Mabe secured Swain in the prisoner compartment of his cruiser, contacted dispatch to tell them what had occurred, and pursued the Escalade, which he estimated was traveling over 100 miles per hour. Sergeant Mabe lost sight of the Escalade in an area where the interstate curved and entered a construction zone. Because other officers had been alerted and were waiting to intercept the Escalade farther south, he decided to pull over before Exit 94 to see if the Escalade had turned back. Shortly thereafter, he received a report that there had been a collision at the top of Exit 94. He proceeded to the exit where he saw the Escalade had skidded to a halt after hitting a red Chevy pickup truck. The driver of the pickup, Christy Clark, had parked in the exit ramp emergency lane with the flashers on because her truck was overheating. She was trapped inside the truck by the impact of the Escalade and did not remember any details about the collision. First responders were eventually able to extricate Clark from her truck.

Sergeant Mabe saw that there was no one in the Escalade and a crowd of onlookers told him that someone had gotten out of the Escalade, hopped over the fence, and run away.

Shortly before the collision, Russell Chapman and his family finished eating at a restaurant off Exit 94. They were returning to their car when Chapman heard the screeching of tires and saw a dark vehicle hit the pickup truck. Russell and his wife, who is a registered nurse, ran over to offer assistance. Chapman saw an individual wearing dark pants and flip-flops get out of the driver's side of the Escalade, stumble, and start running. He did not see anyone else get out of the vehicle. Chapman chased the individual and got within about twenty feet of him. He stated that he got a good look at his face and identified him as Bivens. Chapman pursued him through several parking lots until he entered a wooded area. Chapman directed someone to call 911 to report that the suspect was in the woods beside the Red Lion Inn.

Officer Cody Clinton of the Elizabethtown Police Department was told to look out for an African American man wearing dark clothing. He spotted Bivens standing in the parking lot of the Tourism Center. Bivens fled but was eventually apprehended. Officer Clinton searched Bivens and found cash totaling $4,156.00 in Bivens's pockets and socks. Kentucky State Police Trooper Shay

Folley took custody of Bivens, who provided him with incorrect identifying information.

After his arrest, Bivens informed the police he was not feeling well and was taken to Hardin Memorial Hospital by EMS. Medical records from the hospital were admitted into evidence at trial. These include a clinical report written by the nurse who performed triage on Bivens, who arrived at the hospital at 10:05 p.m. complaining of shortness of breath and rib pain. According to her report, Bivens told the nurse he didn't "know how fast he was going before hitting another vehicle." It describes him as appearing drowsy and under the influence. He reported taking Percocet and Adderall and was not able to say what time he took the medications. He denied using any other drugs. The clinical report from the physician who examined Bivens shortly thereafter states that the patient had taken Percocet and Adderall earlier in the evening and that he took "more than usual . . . to get high."

While at the hospital, Bivens encountered Christy Clark. According to Clark, Bivens told her he was sorry.

Sergeant Mabe searched the Escalade and found Bivens's birth certificate and driver's license. With this information he discovered Bivens had an outstanding arrest warrant from Georgia. Mabe received a photograph of Bivens and recognized him as the person seated on the passenger side of the Escalade

during the traffic stop. Additionally, Mabe found Swain's wallet and approximately $1,000.00 cash in the center console of the Escalade and a small amount of marijuana on the passenger floorboard.

At trial, Bivens testified in his own defense, against his counsel's advice. He claimed that a third individual in the Escalade, unobserved by Sergeant Mabe, was actually responsible for driving away from the traffic stop and crashing into the pickup truck. Bivens testified that he was traveling home to Atlanta after visiting Louisville to search for talent to set up shows and events. According to Bivens, Swain was driving and Swain's friend Brent Watkins, an African American, was in the passenger seat while he himself was sleeping slumped over in the rear passenger seat. When the trooper pulled them over, Bivens claimed the officer did not look in the back seat and did not see him. When Swain was removed from the vehicle by Mabe, Watkins panicked, jumped into the driver's seat and drove off. After the Escalade struck the parked truck, Watkins and Bivens both jumped out and fled. Bivens testified that he ran away from the accident because he felt nervous as he was in possession of a large amount of cash he had received upon his grandmother's death.

In rebuttal, Sergeant Mabe testified that he had searched a comprehensive database for individuals named Brent Watkins and there were no African American individuals with that name in Kentucky. The Commonwealth

also introduced a recording of a telephone conversation Bivens had with his sister while he was in jail in which he told her he was on Adderall and Percocet and had totaled a vehicle out.

Bivens was indicted on multiple charges following his arrest. Before trial, the Commonwealth moved to dismiss all counts of the indictment except first-degree fleeing and evading police, motor vehicle; first-degree wanton endangerment; and first-degree persistent felony offender. Following a two-day trial, the jury convicted Bivens of all the charges and recommended a sentence of five years on each count enhanced to thirteen years and six months, to run concurrently for a total sentence of thirteen years and six months. The trial court sentenced Bivens in accordance with the jury's recommendation and this appeal followed. Additional facts will be set forth below as necessary.

Bivens argues that the admission of the following inculpatory evidence, which the Commonwealth did not disclose prior to trial, was a discovery violation under RCr 7.24: first, the testimony of Christy Clark, the driver of the pickup truck, that Bivens apologized to her when they encountered each other at the hospital after the accident; and second, the excerpts from the recorded phone call Bivens made from the jail to his sister in which he admitted he was the driver of the Escalade and had taken drugs.

RCr 7.24(1) provides in pertinent part that

Upon written request by the defense, the attorney for the Commonwealth shall disclose the substance, including time, date, and place, of any oral incriminating statement known by the attorney for the Commonwealth to have been made by a defendant to any witness, and to permit the defendant to inspect and copy or photograph any relevant (a) written or recorded statements or confessions made by the defendant, or copies thereof, that are known by the attorney for the Commonwealth to be in the possession, custody, or control of the Commonwealth[.]

The Commonwealth is obligated to disclose incriminating statements made by the defendant "not only to inform the defendant that *he* has made these statements, as he should be clearly aware, but rather to inform the defendant (and to make sure his counsel knows) that the Commonwealth is aware that he has made these statements." *Chestnut v. Commonwealth*, 250 S.W.3d 288, 297 (Ky. 2008). The intent of RCr 7.24 is to ensure "that the defendant's counsel is capable of putting on an effective defense[.]" *Id.*

"We review a trial judge's decision concerning discovery issues under an abuse of discretion standard." *Brown v. Commonwealth*, 416 S.W.3d 302, 308 (Ky. 2013) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

As a preliminary matter, the Commonwealth argues that Bivens waived any arguments concerning potential violations of RCr 7.24 by failing to

make a written request for disclosures as provided in the Rule. The record shows that on August 27, 2018, approximately five months before trial, the trial court entered an order for discovery and inspection pursuant to RCr 7.24(1) requiring the Commonwealth to provide, no later than thirty days after arraignment, any written or recorded statements or confessions made by Bivens and the substance of any oral incriminating statements made by Bivens to any witness. This express order of the trial court put the Commonwealth on notice that it must produce any incriminating materials. Defense counsel was not required to make an additional duplicative written request in order to avoid waiving the issue.

Similarly, the Commonwealth's argument that the objection was waived because Bivens failed to request a continuance after learning of the new evidence is without merit because the Commonwealth does not explain how additional time could have assisted the defense in formulating a new strategy, particularly as to the telephone conversation recording which was introduced by the Commonwealth after Bivens already had testified that Brent Watkins, not he, was the driver of the Escalade.

On the first day of trial, defense counsel objected to upcoming testimony from Christy Clark, the driver of the pickup, that she encountered Bivens at the hospital following the accident and he told her he was sorry. As grounds for the objection, defense counsel stated she had assumed discovery was

complete, and she had only learned of Clark's testimony that morning. Apparently, the Commonwealth had only learned of the testimony the previous evening when the prosecutor interviewed Clark for the first time. The trial court overruled the objection, stating that Clark's testimony could be interpreted both as an admission by Bivens of wrongdoing but could also be beneficial to him as showing remorse and concern for another person. The trial court further stated that the testimony was relevant to the question of identity.

The record shows the Commonwealth was not aware until almost immediately before trial that Clark would testify that Bivens apologized to her. Thus, the facts do not support a finding that the Commonwealth knowingly violated RCr 7.24. In his rebuttal testimony, Bivens admitted that he apologized to Clark at the hospital, explaining that he did not cause the collision but still felt sorry for her. He continued to apologize to Clark throughout his testimony. The trial court's observation that the testimony could actually help Bivens's case by making him appear more sympathetic was well-founded and its decision to admit the testimony was not an abuse of discretion.

The other testimony which Bivens contends violated RCr 7.24 was presented by the Commonwealth to rebut Bivens's testimony that he was not the driver of the Escalade and had not taken drugs on the day of the accident. Bivens gave this testimony on the afternoon of the first day of trial, which was a Friday.

The defense then rested. The trial court released the jury and provided the Commonwealth with the weekend to consider rebuttal testimony.

On the following Monday morning, the trial court inquired if the Commonwealth was going to present rebuttal testimony. The Commonwealth's attorney stated that after listening to Bivens's testimony, he went back and listened to a jail call made by Bivens to his sister after he was arrested. In the call, Bivens told his sister he was on Adderall and Percocet and that he was operating a motor vehicle and totaled the vehicle out.

Defense counsel objected to the introduction of the recording, arguing that the Commonwealth knew or could have known about the call, but the defense was just now hearing about it and it gutted Bivens's entire case. The trial court ruled the statements would not be excluded as they were to be used for impeachment purposes rather than in the Commonwealth's case in chief.

Eric Lewis, Director of the Hardin County Detention Center, testified that the Commonwealth contacted him the night before and asked him to search for a call made by Bivens at approximately 9:19 p.m. on June 9, 2018, after he was arrested.

The Commonwealth played three portions of the call in which Bivens stated that he was on Adderall and Percocet, that it was a hit and run, and that he

"f\*\*\*ed that bitch up." Bivens testified in rebuttal that the statements he made in the call were not literally true and he was exaggerating to "sound cool."

In allowing the recording of the telephone conversation with Bivens's sister to be admitted into evidence, the trial court distinguished between evidence offered by the Commonwealth in its case in chief and evidence offered in rebuttal. This distinction was addressed and rejected by the Kentucky Supreme Court in *Chestnut*, which states: "the duty of discovery imposed by RCr 7.24(1) to disclose incriminating statements does not end at the close of the Commonwealth's case in chief. Rebuttal does not offer a protective umbrella, under which prosecutors may lay in wait." *Chestnut*, 250 S.W.3d at 297. The Court cautioned that "[t]his is not to say that a defendant is permitted to take the stand and commit perjury without recourse. Indeed, a criminal defendant who testifies in his own defense is bound by the same rights and repercussions as every other witness in a court of law, and may rightfully be subject to impeachment or any other available remedy. However, we cannot say that when evidence is withheld in violation of the rules of this Court, that they may be permissibly used under the pretext of rebuttal without consequence." *Id*. at 298. The Commonwealth was aware of the existence of the recording of the inculpatory telephone conversation prior to trial and did not disclose it, thereby violating the trial court's discovery order and the intent of RCr 7.24(1).

Although Bivens's remarks on the tape were prejudicial to his defense, they confirmed evidence already in the record in the form of Bivens's statements to the nurse and doctor at the hospital. "[P]reserved evidentiary . . . errors will be deemed harmless . . . if we can say with fair assurance that the judgment was not substantially swayed by the error." *Ordway v. Commonwealth*, 391 S.W.3d 762, 774 (Ky. 2013). The evidence against Bivens was overwhelming. Sergeant Mabe testified that he saw only two men in the Escalade when he pulled it over for speeding and he identified the front seat passenger as Bivens. Not a single witness saw a third man in the Escalade nor did any witness report a second man fleeing from the Escalade after the collision with the pickup truck. As to Bivens's contention that the third man was an African American named Brent Watkins, Sergeant Mabe testified that a record search showed no black male named Watkins residing in Kentucky. "[T]he erroneous admission of cumulative evidence is a harmless error." *Torrence v. Commonwealth*, 269 S.W.3d 842, 846 (Ky. 2008) (citations omitted). The recording constituted cumulative evidence at best and its introduction was harmless error because the jury could not have been substantially swayed by it.

The next argument relates to the admission of evidence that the police recovered approximately $5,100.00 in cash from the Escalade and from Bivens's person, and that a small quantity of marijuana was found on the passenger side

floorboard of the Escalade. The evidence was introduced as proof of Bivens's motive to flee from the traffic stop. Defense counsel objected on the grounds that the evidence was unduly prejudicial because Bivens was not charged with trafficking in controlled substances and the Commonwealth already intended to introduce Bivens's out-of-state arrest warrant as proof of his motive to flee. The trial court overruled the objection on the grounds that the Commonwealth was not limited to one theory of why someone would flee, one reason being the arrest warrant and the other being the cash and marijuana which indicated drug activity.

KRE 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Such evidence may, however, be admissible "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Under KRE 403, the trial court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of undue prejudice[.]" "[E]vidence of criminal conduct other than that being tried is admissible only if probative of an issue independent of character or criminal predisposition, and only if its probative value on that issue outweighs the unfair prejudice with respect to character" *Billings v. Commonwealth*, 843 S.W.2d 890, 892 (Ky. 1992). "The balancing of the probative

value of . . . evidence against the danger of undue prejudice is a task properly reserved for the sound discretion of the trial judge." *English*, 993 S.W.2d at 945. Bivens argues that the evidence of the cash and marijuana was highly prejudicial and of limited probative value because he was not charged with any drug-related offenses. He characterizes it as inadmissible propensity evidence whose sole effect was to imply he was a drug dealer.

We agree with the trial court that the Commonwealth may introduce proof of more than one possible motive for a defendant's actions. The evidence of the cash and the marijuana fits squarely within the KRE 404(b) exception for proof of motive, in this case, the motive to flee from the police. The trial court did not abuse its discretion in ruling that the probative value of the evidence outweighed any unfair prejudice.

Bivens also argues that the Commonwealth failed to give notice it was intending to present KRE 404(b) evidence as required by KRE 404(c). Bivens did not raise a specific contemporaneous objection to the lack of notice and consequently this alleged error is unpreserved. In any event, Bivens would have had notice of the cash because a large quantity of it was recovered from his person when he was searched by the police and in his testimony when he sought to account for its presence by claiming it was an inheritance from his grandmother.

For the foregoing reasons, the judgment and sentence of the Hardin

Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Roy Alyette Durham, II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky